DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas, following a jury trial, wherein defendant-appellant, William T. Jones, was convicted of aggravated robbery, a violation of R.C.2911.01(A)(1). For the following reasons we affirm the trial court's judgment.
 {¶ 2} On August 6, 2004, defendant-appellant, William T. Jones, was indicted for the June 24, 2004 aggravated robbery of the Maumee Bay General Store, a convenience store and gas station located in Oregon, Lucas County, Ohio. On August 23, 2004, appellant entered a not guilty plea.
 {¶ 3} On February 4, 2005, appellant filed a motion in limine to prevent the state from:
 {¶ 4} "1. Disclosing information that a witness, Joseph Martinez, and Defendant, met while both were serving time in a state penal institution if Defendant chooses not to testify.
 {¶ 5} "2. Disclosing information that the Defendant had been ordered to be released from the Lucas County Jail on July 23, 2004 by his parole officer and was to report to a half-way house in Dayton, OH on July 26, 2004.
 {¶ 6} "3. Permitting any testimony relative to viewing of the video tapes secured from the Maumee Bay General Store which allegedly depicts activity at said store that took place on July 23 and July 24, 2004."
 {¶ 7} The trial court addressed the motion in limine on February 8, 2005, immediately preceding the start of the trial. The court granted appellant's motion as to paragraphs one and two. Thereafter, a discussion was had regarding paragraph three. The parties explained to the court that the store's security cameras take a series of still photographs on a continual rotating basis. Due to the nature of the video equipment, the state would not be able to play the tape to the jury; rather, it would be able to show a VHS tape of a limited number of frames reproduced by the Toledo Police and six paper photographs, three from July 23, 2004, and three from July 24, 2004.
 {¶ 8} Defense counsel specifically objected to any testimony regarding the entirety of the tape as it would not be viewed by the jury. The trial court inquired as to whether appellant wished to view the entire videotape that was viewed by the store employees or to have the entire tape played for the jury. Appellant responded negatively and declined an offer of a continuance to obtain the entire tape. The court then denied appellant's motion in limine as to paragraph three.
 {¶ 9} Thereafter, the trial commenced and the following relevant testimony was presented. William Kwiatkowski testified that he works the 11:00 p.m. to 7:00 a.m. shift, on Fridays and Saturdays, at Maumee Bay General Store. Kwiatkowski testified that on June 24, 2004, at approximately 4:00 a.m., the store was robbed. Kwiatkowski stated that just prior to the robbery he had completed his nightly audit of the first cash register and had moved on to the second register; the two registers are about ten feet apart. Out of the "corner of [his] eye" he saw someone with his hand in the first cash register. Kwiatkowski noted that "to open the register, you don't just hit any old button. You have to know which button to hit."
 {¶ 10} Kwiatkowski testified that he looked over and saw that the man had a knife about an inch-and-half wide and a foot long. Kwiatkowski described the robber as wearing gray or green sweatpants, a stocking over his head covering his face and a hood. The man was five feet five or five feet six inches tall. According to Kwiatkowski, the robbery lasted just seconds.
 {¶ 11} Kwiatkowski testified that he knew appellant because appellant had worked at the store. However, because appellant worked the 11:00 p.m. to 7:00 a.m. shift during the week and Kwiatkowski worked on the weekend, they were never close. Kwiatkowski did acknowledge that the robber's build and height were similar to appellant's.
 {¶ 12} During cross-examination, Kwiatkowski testified that the robber stole $904 out of the register; Kwiatkowski called 9-1-1 immediately following the robbery. Kwiatkowski gave a description of the man to a Lucas County Sheriff's Deputy; Kwiatkowski clarified that he told the deputy that the man had a hooded sweatshirt on not, necessarily, that the hood was up. The robber also had gloves on and, due to the robber's dexterity, Kwiatkowski opined that the gloves were "tight." Kwiatkowski indicated that he believed the robber to be 20 to 30 years old based on how quickly he moved.
 {¶ 13} Shannon Lutman, general manager of Maumee Bay General Store, testified next. Lutman testified that she is in charge of the store's security system. Lutman explained that the system is called a multiplexer and consists of 15 cameras taking still photographs throughout the store and parking lot. Lutman stated that the recording device is located in the office located above the store; only she and the owner, Joe Kiss, have access to the office.
 {¶ 14} On July 24, 2004, at approximately 6:30 a.m., Lutman received a telephone call from Kiss who stated that the store had been robbed. Lutman arrived a little after 7:00 a.m. and began reviewing the security system recordings; Lutman was able to find approximately six photographs of the robber on various cameras.
 {¶ 15} Lutman testified that appellant began working at the Maumee Bay General Store in May 2003, for approximately nine months, and that she was his supervisor. Lutman stated that at some point she learned that appellant had been in the store on the evening of July 23, 2004. Lutman was able to access the security system photographs from July 23, and she, Joe Kiss, two Lucas County Sheriff's Deputies, and employee Joe Martinez viewed the tapes. After comparing the photographs from July 23, with the photographs of the robbery, Lutman concluded that appellant was the robber. Lutman identified the six paper photographs as the still photographs reproduced from the security system tape.
 {¶ 16} Lutman testified that although the store had security cameras in the parking lot, neither the robber nor his vehicle were visible outside. She stated that the front customer parking lot and the side lot where the truck traffic runs are visible. According to Lutman, in order to enter the store without appearing on the cameras, an individual would have to park in the back where the employees generally park and walk along the west side of the building to the front. Lutman stated that this is not the normal flow of traffic.
 {¶ 17} Finally, Lutman testified that when she was appellant's supervisor, she and appellant got along well. She stated that appellant was a good employee and that she had no reason to accuse him of robbing the store.
 {¶ 18} During cross-examination, Lutman acknowledged viewing the security tape for a few hours with various individuals. Lutman and the others discussed, based on how fast the robbery occurred and the fact that the robber knew how to open the cash register, that the robber may have been someone that had worked there. Lutman also admitted that after viewing the tape she, Kiss and Martinez went downstairs to the store and reenacted the robbery.
 {¶ 19} Joseph Kiss, the owner of Maumee Bay General Store testified that generally only one employee works the third shift. Kiss testified that the store has a cash drop box behind a cash register and a safe in the upstairs office; only he and Lutman can access them.
 {¶ 20} Kiss testified that on the morning of July 24, 2004, Kwiatkowski called him to report that that store had been robbed; Kiss immediately went to the store. Once Lutman arrived they reviewed the security tapes.
 {¶ 21} Kiss testified that appellant worked at the store for about six months, until May 2004. Kiss testified that appellant was a good employee and that appellant had assisted him with some manual labor jobs at his home. Kiss stated that even though he ultimately fired appellant, the parting was amicable.
 {¶ 22} Kiss stated that the morning following the robbery he learned that appellant had been in the store the prior evening. Kiss testified that "it — had been brought to [his] attention that Mr. Jones had been released from custody and was in the store that evening." At that point, defense counsel objected to Kiss's reference to appellant's release from custody and the objection was sustained. The court instructed the jury to disregard the statement. Defense counsel then moved for a mistrial.
 {¶ 23} Thereafter, the trial court questioned Kiss, in chambers, regarding his statement. Kiss stated that it was his understanding that he was not permitted to mention the fact that appellant has a criminal record. Kiss indicated that "custody" could mean that "he could have a traffic violation." The trial court then concluded that the statement, technically, was not in violation of paragraph two of appellant's motion in limine which prohibited any mention of the fact that appellant was on furlough and was to report to a halfway house. The court did note that the statement was prejudicial, but that the curative jury instruction was sufficient. Appellant's motion for a mistrial was denied.
 {¶ 24} Kiss continued his testimony stating that upon realizing that appellant had been in the store the prior evening he and others began to compare the images from that evening to the robbery images. Kiss testified that the individuals in the images were the same height and build and had similar shoes, clothing, and a watch. Kiss also stated that appellant had a peculiar "pigeon-toed" walk and they noticed it on the tape. Kiss testified that he had no doubt that appellant committed the robbery.
 {¶ 25} Kiss was cross-examined regarding his statement to employee Joe Martinez. Kiss acknowledged that he threatened to fire Martinez if he perjured himself during appellant's trial. Kiss also acknowledged that he paid another employee to watch the trial and inform Kiss as to what was said.
 {¶ 26} Appellant's first witness was Lucas County Sheriff's Deputy Corey Cole. Cole testified that he responded to the 9-1-1 call on June 24, 2004. Cole took statements from Kwiatkowski, a Subway sandwich store employee (the Subway is located within the Maumee Bay General Store), and a truck driver. According to Cole, Kwiatkowski did not know whether the robber was Caucasian, Hispanic or African American. Cole also stated that Kwiatkowski mentioned that the robber, in addition to the mask, had a hood that was "just sitting on the back." Cole stated that he had no additional contact with any witnesses or appellant because he was not the lead investigator on the case.
 {¶ 27} Joseph Martinez testified that he is an employee at Maumee Bay General Store and that he has a prior felony conviction. Martinez stated that he has known appellant for approximately seven years and that he got appellant the job at the store.
 {¶ 28} Martinez testified that he had worked until 1:00 a.m. on July 24, 2004. Martinez then went home; appellant was staying there, in a tent in the backyard, over the weekend. Martinez and appellant then went to a bar across the street. Martinez testified that, at that time, appellant was not wearing the same clothing he had on when he was in the store the prior evening; specifically, Martinez stated that appellant had on a light colored shirt.
 {¶ 29} At the bar, Martinez did not drink any alcoholic beverages. Martinez testified that appellant did not have any money so he bought him approximately three shots of whiskey and two beers. Martinez stated that they were "playing [pool] for drinks" and that appellant won three additional beers. According to Martinez, when they left the bar appellant was intoxicated. Martinez testified that the last time he saw appellant it was approximately 2:45 a.m. and appellant was walking toward the tent. Martinez did not hear any vehicles between 3:30 a.m. and 4:00 a.m.
 {¶ 30} The next morning, Martinez got a telephone call from Shannon Lutman informing him that the store had been robbed. Martinez went downstairs and encountered appellant getting a cup of coffee. Martinez testified that appellant had on the same clothing that he wore to the bar. Martinez led appellant outside and began questioning him about the robbery; appellant denied robbing the store. Following their heated discussion, appellant packed up his tent and left.
 {¶ 31} Martinez identified the June 23, 2004 security camera photographs of himself, appellant, and Martinez's mother. Regarding the photographs depicting the robber, Martinez testified that, as he told Kiss, it could be anyone.
 {¶ 32} During cross-examination, Martinez stated that he lived approximately ten minutes from the store. Martinez also acknowledged that appellant had worked the third shift and knew the routine regarding "cash drops" and the delivery schedule. Appellant was also aware of the location of the security cameras. Martinez did agree that appellant had physical characteristics and clothing similar to the robber's and wore his watch high up on his right forearm, possibly similar to the way the robber wore his watch.
 {¶ 33} Following the conclusion of the evidence, the jury found appellant guilty of aggravated robbery. Thereafter, appellant was sentenced to a nine-year imprisonment term. This appeal followed.
 {¶ 34} Appellant now raises the following five assignments of error:
 {¶ 35} "Assignment of Error I
 {¶ 36} "The identification of Jones by Kiss and Lutman using a video that was not shown to the jurors was reversible error.
 {¶ 37} "Assignment of Error II
 {¶ 38} "The trial court should have granted a mistrial when Kiss knowingly testified, in violation of a court order, that Jones had just been released from custody.
 {¶ 39} "Assignment of Error III
 {¶ 40} "Jones' conviction was against the manifest weight of the evidence due to the absence of any direct or reliable circumstantial evidence.
 {¶ 41} "Assignment of Error IV
 {¶ 42} "The prosecutor engaged in misconduct by improperly vouching for his witnesses.
 {¶ 43} "Assignment of Error V
 {¶ 44} "[Sentencing error under State v. Blakely (2004),542 U.S. 296.]"
 {¶ 45} The argument in appellant's first assignment of error is twofold. First, appellant contends that the identification of appellant by Kiss and Lutman was unconstitutional. Second, appellant asserts that the identification was improper as it was based on lay opinion testimony of two witnesses who were not present during the robbery.
 {¶ 46} Appellant first argues that the trial court erred by permitting Kiss and Lutman to testify regarding their opinion of the robber gleaned through viewing the security camera videotape that was not shown, in its entirety, to the jury. We first note that, prior to trial, appellant was given the opportunity to continue his trial to permit him to view and duplicate the tape relied upon by Kiss and Lutman in making their identification. The discussion proceeded as follows:
 {¶ 47} "THE COURT: * * *. The first question is you don't wish to review privately the videotapes that the witnesses saw that form the basis for the still photographs; is that correct?
 {¶ 48} "THE DEFENDANT: Right.
 {¶ 49} "THE COURT: Okay. And you also do not wish to have those brought in and made available to the jury as evidence in the case; is that correct?
 {¶ 50} "THE DEFENDANT: Correct.
 {¶ 51} "THE COURT: Okay. And you understand I'll give you a continuance to obtain these tapes so that either you can view them or you can present them to the jury if you determine that's appropriate?
 {¶ 52} "THE DEFENDANT: I understand.
 {¶ 53} "THE COURT: And you don't wish that continuance?
 {¶ 54} "THE DEFENDANT: No, I don't."
 {¶ 55} Appellant also acknowledged that prior to the trial date he discussed the matter with his attorney and he had ample time to make his determination. Appellant agreed that it was in his best interest to proceed to trial.
 {¶ 56} Based on the foregoing, we find that even if the trial court erred (we do not believe so) by permitting testimony as to the security tape that was not admitted into evidence, it was invited error. The invited error doctrine prevents a party from inducing an error in the trial court and then raising it on appeal. See State v. Ross (Jan. 16, 1998), 6th Dist. No. L-96-266, citing State ex rel. Fowler v. Smith (1994),68 Ohio St.3d 357. Here, appellant was thoroughly questioned and affirmatively represented to the court that he did not wish to continue the trial in order to view and/or copy the tape in order to play it for a jury. Thus, this argument lacks merit.
 {¶ 57} The second component of appellant's first assignment of error challenges the reliability of the identification testimony. Appellant contends that because Kiss and Lutman were not eyewitnesses to the robbery, their testimony that appellant was the robber went beyond the "common knowledge of a layman."
 {¶ 58} In their analysis, both parties cite to Neil v.Biggers (1972), 409 U.S. 188, 199-200, which provides that in assessing the reliability of a witness identification, courts review the totality of the circumstances and consider:
 {¶ 59} "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."
 {¶ 60} Although the facts of this case do not fall squarely within the Neil analysis; nonetheless, it is useful. Kiss and Lutman had an unlimited opportunity to view the robber on the videotape, and they compared the tape of the robber with the prior footage of appellant several times. Both Kiss and Lutman stated that the physical attributes and clothing of appellant and the robber were very similar and the speed of the robbery led them to believe that the robber must have had prior knowledge on how to open the cash register. Kiss and Lutman were also very certain that the robber was appellant; they had both worked with him and had known him for approximately nine months. Thus, in looking at the totality of the circumstance, we find that Kiss's and Lutman's identification of appellant were sufficiently reliable.
 {¶ 61} Additionally, there was no indication that the videotape did not depict accurate still photographs of the events in question; and the ability to compare the footage was certainly within a layperson's ability. We further note that the jury did view a portion of the still photographs, on a VHS tape, and had six paper photographs which were transcribed directly from the tape. Accordingly, the jury was able to perform their duty of assessing Kiss's and Lutman's credibility. Appellant's first assignment of error is not well-taken.
 {¶ 62} In appellant's second assignment of error, he argues that the trial court erred in failing to grant a mistrial based upon Kiss's testimony that appellant had just been released from custody. We note that the trial court has discretion in determining whether a reference in the testimony to a forbidden subject merits the extreme remedy of a mistrial. State v.Reynolds (1988), 49 Ohio App.3d 27, 33. Accordingly, the court reviews the trial court's ruling on a motion for mistrial using the abuse of discretion standard. State v. Simmons (1989),61 Ohio App.3d 514, 517. An abuse of discretion connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, unconscionable or arbitrary. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 63} As set forth above, during Joseph Kiss's testimony he stated that it had been brought to his attention that "[appellant] had been released from custody and was in the store that evening." Defense counsel's objection was sustained and Kiss was questioned by the court in chambers. Kiss stated that he was instructed not to testify regarding appellant's criminal record. According to Kiss, "custody" could mean that appellant had a traffic violation; Kiss admitted that he "could have rephrased" himself.
 {¶ 64} The court then clarified with defense counsel that appellant had been convicted of a prior robbery offense and had been released from jail on July 23, 2004, and was to report to a halfway house in Dayton on July 26, 2004. The court then stated that, though prejudicial, because Kiss's testimony was only that appellant had been released from custody, without an identification of the offense the prejudice did not rise to the level that would warrant a new trial. The court further noted that the testimony did not violate the motion in limine with regard to paragraph two. Finally, the court concluded that the curative instruction was sufficient.
 {¶ 65} We agree with the general premise that at trial the introduction of evidence that a defendant has committed a crime independent of the offense at issue is inadmissible. State v.Hector (1969), 19 Ohio St.2d 167, 175. However, where a court sustains an objection and where a statement is not inflammatory, appears not to be intentional, and is not dwelled upon a court does not abuse its discretion in refusing to grant a mistrial motion. State v. Jones (1992), 83 Ohio App.3d 723, 737. Further, it is presumed that a jury will adhere to the court's instructions when told to disregard certain evidence. State v.Jones, 90 Ohio St.3d 403, 414, 2000-Ohio-187.
 {¶ 66} In the present case, we find that the trial court did not abuse its discretion when it denied appellant's mistrial motion. Kiss's remark was brief, not in reference to a specific crime, and did not appear intentional. Further, the court took immediate action to ensure that the jury would not consider the testimony. Appellant's second assignment of error is not well-taken.
 {¶ 67} Appellant's third assignment of error asserts that his conviction for robbery was against the manifest weight of the evidence because "important fact finding responsibilities were taken away from [the jury]" due to Kiss's and Lutman's testimony based upon evidence not available to the jury.
 {¶ 68} We note that the "weight of the evidence" refers to the jury's resolution of conflicting testimony. State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. In determining whether a verdict is against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and "* * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id.
 {¶ 69} Appellant's argument is based on the identification testimony of Kiss and Lutman. Based on our disposition of appellant's first assignment of error, we cannot say that the jury lost its way or created a manifest miscarriage of justice in assessing the witnesses' credibility. Accordingly, appellant's third assignment of error is not well-taken.
 {¶ 70} In his fourth assignment of error, appellant argues that the state, during its closing argument, improperly: vouched for the accuracy of the identification made by Kiss and Lutman including a reference to the way appellant wore his wristwatch; stated that Kiss and Lutman had no motive to lie; and stated that Kiss's threat to Martinez that he not commit perjury underscored Kiss's commitment to tell the truth. Appellant acknowledges that because he failed to object to the statements during trial, he must establish plain error.
 {¶ 71} Although a prosecutor is entitled to a degree of latitude during closing arguments, prosecutorial misconduct may be shown where the remarks are improper and where they prejudicially affected substantial rights of the accused. Statev. Lott (1990), 51 Ohio St.3d 160, 165. The Lott court noted: "`Where opinions [on guilt] are expressed on facts outside the evidence, or are predicated on inferences based on facts outside the evidence, such opinions have not been countenanced and the judgments in those cases have been reversed upon appeal.'" Id. at 166, quoting State v. Stephens (1970), 24 Ohio St.2d 76, 83.
 {¶ 72} In this case, however, because there was no objection to the alleged improper statements, any error is deemed waived. See State v. Wogenstahl (1996), 75 Ohio St.3d 344, 360. Under similar circumstances, this court previously held:
"Our review [of the alleged improper statements], therefore, is discretionary and limited to plain error only. While Crim.R. 52(B) provides that `* * * plain errors or defects affecting substantial rights may be noticed although they are not brought to the attention of the trial court [,]' notice of plain error must be taken with the utmost caution, under exceptional circumstances, and only in order to prevent a manifest miscarriage of justice. In order to prevail on a claim governed by the plain error standard, appellant must demonstrate that the outcome of his trial would clearly have been different but for the errors he alleges. Thus, the alleged prosecutorial misconduct constitutes plain error only if it is clear that appellant would not have been convicted in the absence of the improper comments. In cases such as this, the plain error standard generally presents `an almost insurmountable obstacle to reversal.'" (Citations omitted.) State v. Griffin (Nov. 17, 2000), 6th Dist. No. L-98-1215.
 {¶ 73} The first statement that appellant disputes is the statement the prosecutor made when commenting on the testimony presented as to the peculiar way appellant wore his wristwatch high on his forearm. The prosecutor stated: "There's only one person I ever knew that wore their watch that way and that was my aunt, who was a Roman Catholic nun." Upon review, we find that the statement was not improper. The prosecutor was merely underscoring the argument that it was uncommon to wear a wristwatch that way.
 {¶ 74} Appellant next contends that the prosecutor improperly vouched for the credibility of Kiss's and Lutman's identification testimony by commenting that because they knew the defendant so well, his image was "embedded" in their minds. Appellant also argues that the prosecutor's statement that these witnesses "had no reason to accuse William Jones of this crime unless they believe that William Jones did this crime" was improper. As properly noted by the state, a prosecutor may not state his or her personal belief that a witness was or was not telling the truth. State v. Smith (1984), 14 Ohio St.3d 13, 14. Here, the prosecutor was commenting on the fact that the witnesses knew appellant and were familiar with his physical characteristics. The prosecutor also noted that the testimony presented showed that even though appellant was ultimately fired, there was no animosity between Kiss, Lutman, and appellant. We find that the statements were not improper.
 {¶ 75} Finally, appellant disputes the prosecutor's statement regarding Kiss's "threat" to Martinez not to commit perjury. While the jury could have inferred from that statement that because Kiss told Martinez not to commit perjury, Kiss was telling the truth; looking at the context of the statement we agree with the state that the prosecutor was attempting to refute appellant's argument that Kiss forced Martinez to lie.
 {¶ 76} Based on the foregoing, we find that appellant has failed to establish any prosecutorial misconduct during the state's closing arguments. Appellant's fourth assignment of error is not well-taken.
 {¶ 77} In appellant's fifth and final assignment of error he contends that, pursuant to Blakely v. Washington (2004),542 U.S. 296, the trial court made unconstitutional findings when sentencing appellant. In State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, the Supreme Court of Ohio held that the statutory findings of fact required to be made prior to the imposition of sentence were unconstitutional. Id. at ¶ 97. The court then stated that all cases pending on direct review where an unconstitutional statute was relied upon by the trial court must be deemed void and remanded for resentencing. Id. at ¶¶ 103-104.
 {¶ 78} Appellant was sentenced for a first degree felony and faced a prison term ranging from three to ten years. R.C.2929.14(A)(1). In sentencing appellant to more than the minimum prison term, the trial court noted appellant's prior criminal record, including two robbery convictions, and that he was on parole on the date of the offense. However, the sentencing transcript and the judgment entry are devoid of reference to any of the statutory sections severed in Foster. The court simply stated that it, inter alia, it considered the principles and purposes of sentencing under R.C. 2929.11, and balanced the seriousness and recidivism factors under R.C. 2929.12. Accordingly, because the trial court did not reference any of the statutes found unconstitutional in Foster, we find that the trial court did not abuse its discretion in sentencing appellant to a prison term greater than the stated minimum. See State v.Dula, 6th Dist. No. L-04-1360, 2006-Ohio1-238. Appellant's fifth assignment of error is not well-taken.
 {¶ 79} On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerks' expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Pietrykowski, J., Singer, P.J., Concur.