DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Erie County Court of Common Pleas that found appellant guilty of three counts of rape and five counts of gross sexual imposition. For the following reasons, the judgment of the trial court is affirmed. *Page 2 
 {¶ 2} Appellant sets forth four assignments of error in support of his appeal:
 {¶ 3} "I. The prosecutor's misconduct denied the defendant-appellant due process of law as guaranteed by the 14th Amendment of the U.S. Constitution and under Article I, Section 10 of the Ohio Constitution.
 {¶ 4} "II. The trial court denied the defendant-appellant's motion for a new trial based on newly discovered evidence.
 {¶ 5} "III. The conviction was based on insufficient evidence and is against the manifest weight of the evidence.
 {¶ 6} "IV. Appellant was denied the effective assistance of counsel."
 {¶ 7} The undisputed facts relevant to this appeal are as follows. The charges in this case arose from allegations that appellant had engaged in sexual conduct with his daughter, then eight years old, while she and her older brother were visiting him during the summer of 2003. Appellant and the children's mother are divorced. In early June 2003, appellant drove to Georgia, picked up his daughter and her brother and returned with them to his home in Sandusky, Ohio. Also living in appellant's home were the victim's stepbrother, appellant's girlfriend, and his girlfriend's son. The children stayed with appellant until early August, when their mother picked them up and returned with them to Georgia. Approximately two weeks after she returned home, the victim told her mother that her father had molested her. The next day, the victim's mother contacted the Sandusky Police Department and then took her daughter to the doctor for a physical examination. Within the next few days, the victim was seen by a specialist at the local *Page 3 
children's hospital and interviewed at the Coastal Children's Advocacy Center in Savannah. On September 13, 2004, appellant was indicted on three counts of rape, in violation of R.C. 2907.02(A)(1)(b), and five counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4).
 {¶ 8} The case proceeded to trial before a jury on October 28, 2005, and appellant was found guilty on all counts. On November 8, 2005, appellant was sentenced to terms of life in prison with parole eligibility after ten years on each rape conviction, to run concurrently with each other; three years imprisonment on three of the gross sexual imposition convictions, to run concurrently with each other; and two years imprisonment on each of the two remaining two gross sexual imposition convictions, to run concurrently with each other. The trial court ordered the concurrent three-year sentences to run consecutively to the concurrent two-year sentences, with those to be served consecutively to the life sentences, for a total sentence of life in prison with parole eligibility after 15 years.
 {¶ 9} Appellant filed a motion for new trial based on newly discovered evidence. The trial court denied the motion on March 14, 2006. The issue of the motion and the court's ruling will be discussed more fully under appellant's second assignment of error.
 {¶ 10} In his first assignment of error, appellant asserts prosecutorial misconduct during opening statements, witness testimony and closing arguments. The conduct of a prosecuting attorney at trial generally shall not be grounds for reversal unless the conduct deprived the defendant of a fair trial. State v. Apanovitch (1987),33 Ohio St.3d 19, 24. *Page 4 
In analyzing whether an appellant was deprived of a fair trial, an appellate court must determine whether, absent the improper questions or remarks, the jury would have found the appellant guilty beyond a reasonable doubt. State v. Maurer (1984), 15 Ohio St.3d 239, 267. Moreover, the prosecutor's conduct must be considered in the context of the entire trial. State v. Keenan (1993), 66 Ohio St.3d 402, 410. The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. Smith v. Phillips (1982), 455 U.S. 209, 219. An accused is guaranteed a fair trial, not a perfect one. State v. Lott (1990),51 Ohio St.3d 160, 165.
 {¶ 11} Generally, prosecutors are entitled to considerable latitude in opening statements and closing arguments. State v. Ballew (1996),76 Ohio St.3d 244, 255, 1996-Ohio-81. In closing argument, a prosecutor may comment freely on "what the evidence has shown and what reasonable inferences may be drawn therefrom." State v. Richey (1992),64 Ohio St.3d 353, 362, 1992-Ohio-44.
 {¶ 12} Appellant sets forth numerous arguments in support of this assignment of error. First, appellant accuses the prosecutor of making insinuations and assertions calculated to mislead the jury. Appellant claims the prosecutor alluded to matters that would not be supported by the evidence, vouched for a witness, asserted personal knowledge, and interjected his opinion concerning the credibility of defense witnesses. In support, appellant cites to 26 various pages from the transcript but does not separately *Page 5 
argue how any of the statements were improper. After carefully reviewing each of the portions of transcript cited, we find that the prosecutor's statements were not improper.
 {¶ 13} Appellant asserts he was prejudiced by the prosecutor referring to him and other witnesses as "liars." These references occurred during cross-examination of appellant and during the state's closing argument. It is not prosecutorial misconduct to characterize a witness as a liar or a claim as a lie if the evidence reasonably supports the characterization. State v. Baker, 159 Ohio App.3d 462, 2005-Ohio-45, ¶ 19, citing State v. Stroud, Montgomery App. No. 18713, 2002-Ohio-940 and State v. Gunn (Aug. 7, 1998), Montgomery App. No. 16617. In this case, appellant's testimony differed in significant respects from that of the victim; clearly, one version of the events was truthful and one was not. In his closing argument, the prosecutor called attention to inconsistencies in defense witnesses' statements and to several conflicting statements made by appellant's son when he testified. As we have noted already, a prosecutor is entitled to considerable latitude in opening statement and closing arguments. Ballew, supra, andRichey, supra. Based on the foregoing, we find there was ample evidence supporting the prosecutor's remarks and this argument is without merit.
 {¶ 14} Appellant also claims the prosecutor engaged in misconduct by referring to a voice stress analysis test appellant agreed to take during the investigation. According to investigators, the test results indicated that appellant was being deceptive when he answered questions. Appellant now argues that testimony about the test results was heard by the jury and allowed the jurors to infer that he had lied to the police. Appellant *Page 6 
completely misrepresents this issue, however. Upon review of the record, we find that the test results were not allowed into evidence. There was no mention of the voice stress analysis test in the presence of the jury. Twice during trial the issue was raised by counsel and the matter of the admissibility of the test was discussed outside the jury'spresence. At no time did the jury hear testimony concerning the test; in fact, the trial court eventually disallowed any mention of it. This argument is wholly without merit.
 {¶ 15} Appellant also claims that the prosecutor improperly mentioned his failure to pay child support, thereby inflaming the emotions of the jury. The child support issue came up during the state's cross-examination of appellant. In the context of this claim, appellant asserts that the prosecutor made insinuations and assertions that misled the jury, inflamed the jury's emotions and insinuated bad character based on a failure to pay child support. The record reflects that during cross-examination, the prosecutor asked appellant if he was paying child support; appellant responded that he was not. When the prosecutor asked appellant if his support payments were in arrearage, counsel objected. The court sustained the objection, commenting that child support had nothing to do with the allegations in this case.
 {¶ 16} This court has reviewed the full text of appellant's testimony. On direct examination, appellant testified as to several examples of his positive parenting skills. Appellant's statements opened the door for the prosecutor to question appellant regarding child support in an effort to impeach his character as a parent. Because appellant put his character as a parent in issue, pursuant to Evid.R. 404(A)(1), the prosecutor could rebut *Page 7 
such evidence. We do not find reversible error in the prosecutor's questions regarding appellant's child support obligations and, accordingly, this argument is without merit.
 {¶ 17} Appellant next argues that he was prejudiced because the state failed to notify defense counsel of the name of one of its witnesses prior to trial. Appellant asserts he was not provided with the witness's name during discovery. The witness in question was a therapist who counseled the victim for about five months. Sometime after her contact with the victim, she left Georgia and moved to Mississippi.
 {¶ 18} The record reflects that the issue of two counselors being called to testify for the state was initially raised in the state's response to a motion in limine filed by appellant prior to trial concerning possible expert testimony regarding the victim's credibility. In response to the motion in limine, the state agreed that the counselors would not testify as to the victim's veracity. The record also reflects that during a discussion in court immediately prior to trial, the prosecutor offered to arrange for defense counsel to speak with the witness that day. The prosecutor clarified that she did not intend to question the witness about anything the victim told her during counseling. After lengthy discussion, the trial court ruled that the witness would be permitted to testify on a limited basis to the fact that the counseling took place and as to its duration. The court stated that the testimony could not be used to bolster the victim's testimony. Ultimately, the witness testified only that she counseled the victim from August through December 2003. *Page 8 
 {¶ 19} It is clear from our review of the record that appellant had notice of the forthcoming testimony prior to trial and agreed to the testimony on a limited basis. We find that although the record reflects that the defense did not have the witness's name until the issue was discussed on the first day of trial, appellant was not prejudiced by the limited nature of the testimony. This argument is therefore without merit.
 {¶ 20} Finally, appellant argues under this assignment of error that the trial court erred by allowing testimony that he shot the victim's brother and stepbrother with a toy pellet gun the day they arrived at his house for the summer. The victim in this case testified during direct examination that a few minutes after she and her brother arrived at appellant's house, her father came out of his bedroom with a pellet gun and said that everyone who comes into the house has to get shot. She testified that appellant put the gun to her brother's head and told him to say some "cuss words" or he would be shot. She further testified that after her brother repeated the words appellant put the gun to her head and told her to say the same words. She stated that she started to cry and refused to say the words. Appellant then told her brother and stepbrother to run to the kitchen and as they ran he shot pellets at them. Appellant told the boys to run a second time from the living room to the kitchen and shot at them again, that time hitting one of them on the hand. Defense counsel did not object to the testimony; therefore, our review of the alleged improper testimony is discretionary and limited to plain error only.
 {¶ 21} Crim.R. 52(B) provides that "* * * plain errors or defects affecting substantial rights may be noticed although they are not brought to the attention of the trial *Page 9 
court." However, this court has held that "* * * notice of plain error must be taken with the utmost caution, under exceptional circumstances, and only in order to prevent a manifest miscarriage of justice. In order to prevail on a claim governed by the plain error standard, appellant must demonstrate that the outcome of his trial would clearly have beendifferent but for the errors he alleges." State v. Jones, 6th Dist. No. L-05-1101, 2006-Ohio-2351, ¶ 72. (Citations omitted. Emphasis added.)
 {¶ 22} This court has reviewed the entire record of proceedings in the trial court. Upon consideration of the record before us and the law, we find that appellant has not demonstrated that the outcome of his trial would clearly have been different but for the victim's testimony about the pellet gun. This argument has no merit.
 {¶ 23} Appellant failed to show that but for the alleged instances of prosecutorial misconduct, he would not have been convicted. Accordingly, we find appellant's first assignment of error not well-taken.
 {¶ 24} As his second assignment of error, appellant asserts that the trial court erred by denying his motion for a new trial on the basis of newly discovered evidence. The evidence consisted of a copy of his work schedule for July through October 2003, which he argued would impeach the victim's testimony by showing that he was at work during the times the victim said he committed the acts of abuse.
 {¶ 25} The trial court denied appellant's motion for two reasons. First, the list of appellant's hours worked was not attached to the motion in the form of an affidavit and as such the court was required to disregard it. Second, the trial court found that appellant *Page 10 
had failed to show that the "new evidence" disclosed a strong possibility that it would change the result if a new trial were granted. The trial court also noted that appellant's work schedule could have been discovered and produced before trial with the exercise of due diligence.
 {¶ 26} The granting of a motion for a new trial on the ground of newly discovered evidence is within the sound discretion of the trial court and in the absence of a clear showing of abuse of that discretion, the ruling will not be disturbed on appeal. State v. Williams (1975), 43 Ohio St.2d 88, paragraph two of the syllabus. "To warrant the granting of a motion for new trial in a criminal case based upon the ground of newly discovered evidence, it must be shown that the evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." State v. King (1989),63 Ohio App.3d 183, 191, citing, State v. Petro (1947), 148 Ohio St. 505, syllabus;State v. Lopa (1917), 96 Ohio St. 410.
 {¶ 27} Appellant has not demonstrated that his work schedule for the summer of 2003, could not have been discovered before trial. Additionally, we agree with the trial court's finding that the newly discovered evidence did not disclose a strong probability that it would change the result of appellant's conviction if a new trial was granted. *Page 11 
Accordingly, we find that the trial court did not abuse its discretion in denying appellant's motion for a new trial and his second assignment of error is found not well-taken.
 {¶ 28} In his third assignment of error, appellant asserts that his conviction was based on insufficient evidence and was contrary to the weight of the evidence.
 {¶ 29} "Sufficiency" of the evidence is a question of law as to whether the evidence is legally adequate to support a jury verdict as to all elements of the crime. State v. Thompkins (1997), 78 Ohio St.3d 380,386, 1997-Ohio-52. When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court must examine "the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. A conviction that is based on legally insufficient evidence constitutes a denial of due process, and will bar a retrial. Thompkins, supra, at 386-387.
 {¶ 30} In contrast, a manifest weight challenge questions whether the state has met its burden of persuasion. Thompkins, at 387. In making this determination the court of appeals sits as a "thirteenth juror" and, after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a *Page 12 
new trial ordered." Thompkins, supra, at 38, citing State v.Martin, (1983), 20 Ohio App.3d 172, 175.
 {¶ 31} Appellant was convicted of three counts of rape in violation of R.C. 2907.02(A)(1)(b), which provides:
 {¶ 32} "(A) (1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
 {¶ 33} "* * *
 {¶ 34} "(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person."
 {¶ 35} It is undisputed that the victim was under the age of 13 during the summer of 2003.
 {¶ 36} "Sexual conduct" is defined in R.C. 2907.01(A) as "* * * vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."
 {¶ 37} Appellant also was convicted of five counts of gross sexual imposition in violation of R.C. 2907.05(A)(4), which provides: *Page 13 
 {¶ 38} "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
 {¶ 39} "* * *
 {¶ 40} "(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."
 {¶ 41} R.C. 2907.01(B) defines "sexual contact" as "* * * any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."
 {¶ 42} The jury heard extensive testimony from the victim, who was 11 years old at the time of the trial. She testified that in the summer of 2003, she and her brother went to Ohio to spend the vacation with appellant. She testified that sometime after her first week at her father's house he began to touch her. At first, he came to her bedroom early in the morning and told her to come to his room. She testified that she went to his room and he shut the door and touched her in her "private areas." When the victim was handed a diagram of an unclothed adult male and two diagrams showing the front and back of an unclothed young girl, she indicated by using a marker that her father touched her chest, "butt" and vagina. She testified that he touched her over her clothes on four or five separate occasions. She stated that on another occasion he took her into his room, pushed *Page 14 
her onto the bed and took her pajamas off. She testified that he again touched her "private area," indicating her chest and buttocks. She further testified that one morning when she was asleep on the couch her father woke her up and told her to go to his room. She went into the room but told him to leave her alone; he then yelled at her to get on the bed. The victim testified that appellant removed her clothes and his pajamas and then put "his private" in her "front." She stated that this happened at least three times. She further testified that one morning he woke her up, penetrated her vaginally and then tried to "enter from the back;" she testified that "I was trying not to let him and he — I don't think he did." She also testified that another time he forced her to let him put his penis in her mouth.
 {¶ 43} The victim testified further that the acts did not occur every day and that most of the time her brother and stepbrother were sleeping. She stated she did not tell anyone in Ohio what was happening because she was afraid "someone would get hurt" if she did. She testified that she talked to her mother on the telephone during the summer but never said anything about the abuse because her father was always nearby. She finally told her mother several weeks later when she was back in Georgia and school had started. She stated that she did not give her mother "full detail" right away because she did not want her mother to cry.
 {¶ 44} The state also presented the testimony of the physician who examined the victim after she disclosed the abuse. The doctor testified that the victim showed no signs of physical abuse and that the physical examination by itself therefore could not be used *Page 15 
to confirm or deny any allegations of sexual abuse. She further stated that child molesters who abuse pre-pubertal children generally try not to hurt the victim or leave any physical evidence. The doctor testified further that because approximately 95 percent of the children who present for examination for sexual assault have a normal exam, the child's statements are the most important piece of data in the investigation.
 {¶ 45} The state presented the testimony of therapist Carla Steckler, who counseled the victim from August through December 2003. The victim's mother, Brandi, also testified that her daughter and son spent several weeks in 2003 with appellant in Ohio. Brandi testified that when she called during the summer to speak to the children, her daughter was quiet and wanted to come home. When she drove to Ohio to pick the children up in early August, her daughter was very quiet and "clingy," which was unusual. Brandi then testified as to the conversation in late August 2003, when her daughter told her that her father had molested her. She stated that her daughter cried, telling her appellant "touched her in places" and giving her mother "the basics" of what he did. Brandi started to cry at that point and did not ask her daughter any more questions. She immediately took her daughter to the local police station where she was told she would have to contact the police in Sandusky. Brandi contacted the Sandusky police and took her daughter to the doctor the following day.
 {¶ 46} Sandusky Police Officer Helen Prosowski testified that she interviewed appellant after the initial allegations were made. Prosowski stated that during her *Page 16 
interview with appellant he described himself as a "street warrior" and denied the allegations, claiming his former wife made up the story.
 {¶ 47} The defense presented several witnesses, including appellant's sister, mother, teen-aged daughter and son, and his wife, all of whom testified as to day-to-day activities at the home during the summer. Appellant testified on his own behalf. He denied ever touching his daughter in a sexual manner or engaging in sexual conduct with her, and said she was very happy staying with him for the summer. Appellant suggested that the victim's mother coerced her into making the accusations against him.
 {¶ 48} This court has thoroughly considered the entire record of proceedings in the trial court and finds that the testimony of the victim presented sufficient evidence from which, when viewed in a light most favorable to the state, a rational trier of fact could have found appellant guilty beyond a reasonable doubt of three counts of rape pursuant to R.C. 2904.02(A)(1)(b) and five counts of gross sexual imposition pursuant to R.C. 2907.05(A)(4). See State v. Jenks (1991),61 Ohio St.3d 259, syllabus. As this court has consistently affirmed, the trier of fact is vested with the discretion to weigh and evaluate the credibility of conflicting evidence in reaching its determination. It is not within the proper scope of the appellate court's responsibility to judge witness credibility. State v. Hill, 6th Dist. No. OT-04-035,2005-Ohio-5028, ¶ 42. Further, based on this testimony, this court cannot say that the jury clearly lost its way or created a manifest miscarriage of justice by finding appellant guilty of the charges of rape and gross sexual imposition. *Page 17 State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v.Martin (1983), 20 Ohio App.3d 172.
 {¶ 49} Based on the foregoing, appellant's third assignment of error is found not well-taken.
 {¶ 50} In his fourth assignment of error, appellant asserts that he was denied effective assistance of counsel in several respects. Appellant argues that the evidence against him was not overwhelming and the result of the trial would have been different if not for counsel's ineffective performance.
 {¶ 51} To prevail on a claim of ineffective assistance of counsel, appellant must show counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. This standard requires appellant to satisfy a two-part test. First, appellant must show counsel's representation fell below an objective standard of reasonableness. Second, appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different when considering the totality of the evidence that was before the court. Strickland v. Washington (1984), 466 U.S. 668. This test is applied in the context of Ohio law that states that a properly licensed attorney is presumed competent. State v. Hamblin (1988),37 Ohio St.3d 153.
 {¶ 52} Appellant raises several issues which were considered and rejected in our review of his first assignment of error. Further, appellant's claims are not supported by any argument or authority. Upon review of the foregoing, we cannot find that counsel's *Page 18 
representation fell below an objective standard of reasonableness. Accordingly, appellant's fourth assignment of error is not well-taken.
 {¶ 53} On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial. The judgment of the Erie County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Erie County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4. *Page 1