DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas.
 {¶ 2} Appellant, Timothy Triplett, was initially indicted by the Lucas County Grand Jury on two counts of rape in violation of R.C. 2907.02(A)(1)(b) and, after being found indigent, was appointed counsel, namely, Merle R. Dech, Jr. Subsequently, on March 1, 2004, appellant was re-indicted on two counts of rape with force or threat of force in violation of R.C.2907.02(A)(1)(b)(2); both are felonies of the first degree. The charges in the first indictment were nolled. The rapes allegedly occurred between March 1 and December 31, 2002.
 {¶ 3} During appellant's arraignment on the new charges, he again admitted indigency. The trial judge then informed appellant that she wanted Attorney Dech to continue to represent him. Appellant, however, expressed dissatisfaction with Dech, asserting that while his appointed counsel was a "good lawyer," he spent little time with his client. The court, nonetheless, re-appointed Attorney Dech as appellant's counsel and continued with the arraignment. Appellant made no further complaints about his attorney at that time.
 {¶ 4} On March 16, 2004, Dech filed a motion to withdraw as appellant's attorney. Counsel indicated that when he met with appellant in the Lucas County Jail, appellant accused Dech of "selling him out and/or "railroading" him. At a pretrial held on March 22, 2004, appellant was sworn in and testified that any feelings that he previously expressed would not interfere with his relationship with his trial counsel in representing appellant, that he was satisfied with his counsel, that he would aid counsel in preparing his defense, and that he was not requesting that counsel be removed from his case. After some discussion, Dech agreed to continue to represent appellant.
 {¶ 5} Just prior to the commencement of his trial, appellant asked the court for new counsel. Appellant complained that Dech "has other cases and I don't feel enough was put inside of this case." When asked to be more specific, appellant asserted that his attorney failed to obtain some vital "papers" from the Lucas County Children Services ("LLCS"). Appellant stated that the documents related to the agency's prior "investigation on me." The trial judge found that, at this point in time, there was nothing in the record of this cause to show the relevance of these "papers" and that she would deal with the issue when it arose. The judge concluded:
 {¶ 6} "The court finds that there is nothing in the record that prevents this defendant from being appropriately and carefully represented by Mr. Dech. According to the Strickland
standard we find Mr. Dech is extremely competent to do this and there is no evidence which would require this court to remove Mr. Dech. That request is denied. Let's bring the jury up."
 {¶ 7} The first witness to testify in the state's case was the victim, Pam G., who was seven[1] at the time of trial. Her testimony provided the following alleged facts. When she was six years old, Pam, her two brothers, and her mother lived with appellant. Pam referred to appellant by his Muslim name, Amir, and stated that he called her Amira, which means "Princess." According to Pam, appellant engaged in sexual conduct with her seven times. On the first occasion, appellant bent Pam over a chair in the "front room." Her pants and underwear were down and his pants were "off." Appellant then put his "don" (penis) in her behind and it hurt. When appellant was finished, he wiped "wet stuff" off her behind with a towel and told Pam that she could not tell anyone or she would be "in trouble."
 {¶ 8} Pam described two more incidents identical to the first incident, one happened in her bedroom, and the second occurred in the kitchen. Each time appellant told the child that she would be in trouble if she told anyone. When asked why she never told her mother or aunt about the sexual conduct, Pam replied that she was "scared." After she and her brothers were removed from her mother's custody by LLCS in December 2002, Pam told her foster mother, Juana Wade, about the incidents.
 {¶ 9} Wade testified that when Pam was placed in her foster home, she frequently wet the bed and had nightmares. Some time thereafter, her school had a session in which the children were taught the difference between "good touches and bad touches." While Pam was taking a bath, her foster mother asked the child whether anyone ever had her remove her clothes. Pam immediately told Wade about appellant. Wade believed that it was the discussion about "touches" at school that led to Pam's disclosures. Wade gave this information to Pam's LCCS caseworker, Yolanda Streeter, who relayed that information to Nicole Williams.
 {¶ 10} Williams is a LLCS assignment specialist who is trained in the investigation of allegations involving the sexual abuse of a child. Upon learning of the alleged sexual abuse of Pam, Williams first notified the Toledo Police Department. Both Pam's foster mother and, at Pam's request, her caseworker were present during the interview. However, neither was allowed to take part in that interview. Williams testified that it is not unusual for a child to delay in reporting sexual abuse because the child fears what might happen to them if they do report the abuse and/or because they blame themselves for the abuse. Williams also stated that children often forget the exact dates of when the abuse occurred.
 {¶ 11} Randall S. Schlievert, M.D. also testified at appellant's trial. Dr. Schlievert conducted a physical examination of Pam's genitalia and anus, as well as the surrounding area, and found them to be normal. The physician further testified, however, that the vast majority (approximately 95 percent) of children who are evaluated for sexual abuse have normal examinations. Dr. Schlievert opined, to a reasonable degree of medical certainty, and based upon his training, education, and experience, that he would not anticipate finding any damage to the anus within one to three months after the last act of sexual abuse.
 {¶ 12} On cross-examination, appellant's trial counsel asked the doctor whether anal injuries, such as "thickened anal folds," could result from anal penetration. The doctor replied that: "[R]ecent research and training has revealed that thickened anal folds is generally not an expected or proof positive sign of sexual abuse." Counsel then asked if "five or six penetrations" of the anus would cause "a thickening of the anal sphincter skin folds." The doctor answered, "* * * generally no."
 {¶ 13} At the close of the state's case, Attorney Dech moved, pursuant to Crim.R. 29, for a judgment of acquittal. He argued that there was no physical evidence was offered to prove that the sexual abuse occurred and that the victim's testimony was not credible. The trial court denied the motion.
 {¶ 14} Appellant subsequently called a number of defense witnesses, including Fidel Martinez, an assessment caseworker employed by LLCS. Martinez testified that, on July 9, 2002, he received a referral of domestic violence at appellant's residence. On July 19, 2002, Martinez went to that residence and spoke with the entire family, including appellant, the children's mother, Deanna F., Pam, and her two brothers. Martinez asked the family members an array of questions that are required to be asked in assessing any danger to the children in the home. One area of concern is whether there is any sexual abuse of a child occurring in the home. Upon direct examination, Martinez said that Pam denied that she was being sexually abused at that time.
 {¶ 15} On cross-examination, Martinez admitted that it "it does happen" that a child will not report sexual abuse. He explained that the main goal of his assessment was to ascertain whether or not there was domestic violence in appellant's household and whether or not there was any future risk of harm to the children. When asked by the state as to the results of the investigation, Martinez replied, "The rationale that I documented was there was an incident of domestic violence in the home. The children were in the bedroom with the door shut during the domestic violence. The children received `whuppings with a switch.'" Upon further questioning related to the "whuppings," Martinez indicated that they were infrequent. On redirect examination, he testified that he found that the future risk of harm to the children was low and that there was no finding of sexual abuse.
 {¶ 16} Two other defense witnesses, Eric L. Boles, also known as Naje, and Jahini L. Triplett also testified. Boles said that he lived with appellant, Deanna, and her children from November 2001 until "about" June 2002. He claimed that the relationship between appellant and Pam was "average" and that there was no talk about any "abuse," during family and religious meetings that were held in the home. Boles also maintained that, because he and appellant worked the same hours at the same business, he was always present in the home at the same time as appellant. On cross-examination, Boles testified that he never saw any of the children hit with a switch.
 {¶ 17} Jahini, who is appellant's nephew, testified that he, his wife, and his three children resided with appellant for two and one-half to three months in the spring/and or summer of 2002. According to Jahini, appellant and Pam had a father-daughter relationship. He also stated that he never saw anyone hit any of the children with a switch.
 {¶ 18} Deanna F., Pam's mother, was a witness for the defense. She, too, testified that several persons lived in the house, which she said belonged to Jahini. According to Deanna, they were a religious family and consulted the Koran to resolve disputes and to discipline the children. Moreover, she indicated that appellant loved the children, and they loved him. Deanna asserted that they did family things together, for example, having a picnic and going to the zoo. She reported that, as a family, she and her children were learning Arabic and studying the Koran.
 {¶ 19} Additionally, Deanna asserted that Pam never complained about appellant while they were all living together. Deanna did, however, acknowledge the fact that the children, including Pam, were occasionally "whupped" with a switch, either by her or, on occasion, by appellant. She maintained that the children were later removed from her custody because she took her son to the hospital with a burned foot. Appellant's counsel asked Deanna whether Pam had any medical conditions. Deanna replied that her daughter would complain that while visiting Deanna's sister, she (Pam) cried, had nightmares, wet the bed, and that "stuff" was hurting.
 {¶ 20} On cross-examination, Deanna contended that appellant was never alone with her children, and that, even when she bathed, she had a babysitter for those children. Deanna acknowledged the fact that appellant was a "father figure" for her children. The prosecutor also elicited testimony from Deanna that showed that she visited appellant a number of times after he was arrested and confined in the Lucas County Jail.
 {¶ 21} In rebuttal, the state called a number of witnesses who were employed by LLCS. Those witnesses included Julie Williamson, an attorney for LCCS. Williamson testified that Deanna's children were removed from the home due to a number of areas of concern. These were neglect issues, e.g., educational and medical neglect; unstable and unsafe housing conditions; substance abuse; and violence in the home involving both Deanna and her children. Williamson stated that during the juvenile court proceedings, Deanna "admitted to all the issues in the home, almost across the board." In giving this testimony, Williamson referred, without objection, as to an agreement allegedly contained in the record of the juvenile court. The agreement itself was never presented to the court in appellant's criminal trial and, thus, was never entered into evidence.
 {¶ 22} At the close of all evidence, appellant's attorney renewed his Crim.R. 29 motion for acquittal. The trial court denied the motion and proceeded to closing arguments.
 {¶ 23} Early in his closing argument, one of the prosecutors, J. Tracy Sniderhan, stated:
 {¶ 24} "* * * [T] here are two issues that I really think are the focus here are going to be was there sexual conduct during the period of time in which we said, and if, in fact, there was, then I'm asking you to further find that that sexual conduct was done by force. I don't think Pam consensually engaged in that type of activity."
 {¶ 25} Later in his argument, Sniderhan discussed the victim's credibility in conjunction with the possible reason why she was raped anally. He opined: "Why might one want to do it anally? Because you don't break the hymen. You won't have medical testimony to that broken hymen." The prosecutor then noted that Dr. Schlievert talked about a bending over position when he described the procedure used for a colonoscopy and observed that Pam described this position as the one used during the alleged rapes.
 {¶ 26} Sniderhan, in referring to Pam's testimony, noted that she said that the incidents of rape happened seven times and that the indictment only alleged two charges of rape. He informed the jury that the difference between the testimony and the indictment involved a procedural issue and did not mean that the instances of sexual conduct happened only two times. Sniderhan again mentioned that the sexual conduct occurred seven times later in his closing argument. He then discussed the element of force, saying:
 {¶ 27} "When he [appellant] said bend over, she [the victim] bent over. But he told her don't tell anybody, you're going to get in trouble. We know he's whupped her. We know from even the [LLCS] case that there was [sic] threats against Mom and the children by Mr. Triplett. So I'm not so sure about this warm, loving relationship in that home * * *."
 {¶ 28} In rebuttal to the closing arguments made by appellant's attorney, a second prosecutor, Lori L. Olender, also mentioned the fact that Pam was allegedly raped seven times and told the jury that there were only two charges because the state did not want to make the child describe all seven of the rapes and, therefore, chose the two that the victim remembered in greater detail. Olender also articulated the reasons a child would not report the abuse and might behave "normally." Specifically, she mentioned that the domestic violence that occurred in this particular home as a possible deterrent, as well as the alleged threat made by appellant to the child. Olender also mentioned that child sexual abusers victimize children because they "aren't smart" and easily threatened and, therefore, "won't tell."
 {¶ 29} After receiving instructions from the trial judge, the jury retired to deliberate. They a returned a guilty verdict on both counts in the indictment. Appellant then filed a motion for a new trial; this motion was also overruled. Appellant was ajudged a sexually oriented offender and was sentenced to two consecutive mandatory life terms, with eligibility for parole in 20 years.
 {¶ 30} Appellant appeals his conviction and asserts the following assignments of error:
 {¶ 31} "Assignment of Error No. I. The trial court erred to the prejudice of appellant by denying in toto his motion for judgment of acquittal, as the evidence was insufficient to establish the element of the purposeful use of force or threat of force with respect to each count of the indictment."
 {¶ 32} "Assignment of Error No. II. The trial court committed plain error with respect to the admission of alleged other acts of sexual conduct between appellant and the alleged victim, as well as admitting evidence of other acts of misconduct by appellant, further by not issuing a limiting instruction to the jury restricting the use of such evidence in its deliberations."
 {¶ 33} "Assignment of Error No. III. Appellant did not receive the effective assistance of counsel as contemplated by the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution."
 {¶ 34} "Assignment of Error No. IV. The trial court erred to the prejudice of appellant by denying his repeated requests for new counsel and by permitting originally-appointed counsel to continue on the case even after having been made aware of the strained relationship between appellant and his appointed counsel."
 {¶ 35} In Assignment of Error No. I, appellant contends that the trial court erred in denying his motion for a judgment of acquittal because insufficient evidence was offered to establish that force was used in the rape of Pam.
 {¶ 36} A motion for acquittal under Crim.R. 29(A) tests the sufficiency of the evidence. See State v. Miley (1996),114 Ohio App.3d 738, 742. When reviewing a challenge to the sufficiency of the evidence, an appellate court must view the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. (Citation omitted.) See, also, State v. Jones (2000),90 Ohio St.3d 403, 417.
 {¶ 37} As applicable to the case under consideration, R.C.2907.02(A)(1)(a) and (b) provide, in pertinent part, that no person shall engage in sexual conduct with a child who is less than 13 years old and, for the purpose of preventing resistance, uses force or a threat of force. R.C. 2901.01(A) defines force as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing."
 {¶ 38} To establish the element of force in a rape case involving a minor child when the offender stands in a position of authority, neither express threat of harm nor evidence of significant physical restraint need be proven. State v. Dye,
(1998), 82 Ohio St.3d 323, syllabus. Instead, it is the position of authority and power, in relationship with the child's vulnerability, that creates a unique situation of dominance and control in which explicit threats and displays of force are unnecessary. State v. Eskridge (1988), 38 Ohio St.3d 56, 58-59. Thus, when the rape involves a child and that child's parent, or person who stands in loco parentis, subtle and psychological forms of coercion sufficiently show force. So long as the prosecution establishes that the victim's will was overcome by fear or duress, the forcible element of rape can be established." Id.
 {¶ 39} In the case under consideration, sufficient evidence was offered to show, beyond a reasonable doubt, that force, within the meaning of R.C. 2907.02(A)(1)(b), was used by appellant in the rape of Pam. In particular, based upon the evidence, as set forth infra, appellant was a father figure to/in a position of authority over the victim. Pam was told by appellant that she would be in trouble if she revealed the rapes, and Pam expressed fear and hurt. Accordingly, appellant's Assignment of Error No. I is found not well-taken.
 {¶ 40} In his Assignment of Error No. II, appellant contends that the trial court committed plain error by allowing testimony, as well as prosecutorial mention, of "other acts" of sexual conduct between appellant and the victim. Appellant also complains that permitting testimony and remarks by the prosecutors involving "other acts" of violence in appellant's home is plain error.
 {¶ 41} Plain error is an obvious error or defect in the trial proceedings that affects a substantial right. Crim.R. 52(B). Reversal for plain error is warranted only when the outcome of the trial would have been different without the error. State v.Mitts (1998), 81 Ohio St.3d 223, 232 Furthermore, plain error is only found in exceptional circumstances to prevent a miscarriage of justice. State v. Phillips (1995), 74 Ohio St.3d 72, 83.
 {¶ 42} A trial court has broad discretion in allowing the admission of evidence. State v. Maurer (1984),15 Ohio St.3d 239, 265. An appellate court will not disturb evidentiary rulings absent an abuse of discretion that produces a material prejudice to the aggrieved party. State v. Roberts, 156 Ohio App.3d 352,2004-Ohio-962, at ¶ 14. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in reaching its ruling. State v. Adams (1980), 62 Ohio St.2d 151, 157
(Citations omitted.).
 {¶ 43} Additionally, parties are granted wide latitude in closing arguments, and the question as to the propriety of these arguments is generally left to the sound discretion of the trial court. State v. Maurer, 15 Ohio St.3d at 266. The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.State v. Smith (1984), 14 Ohio St.3d 13, 14.
 {¶ 44} In order to permit the admission of "other acts," it must be demonstrated by substantial evidence that the defendant was the perpetrator of the other acts. State v. Broom, (1988),40 Ohio St.3d 277, 282-283. Second, the other acts evidence must tend to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Evid.R. 404(B); R.C. 2945.59. Such evidence may also be introduced for any other relevant purpose. Evid.R. 404(B). The rule and the statute "codify the common law with respect to evidence of other acts of wrongdoing, and are construed against admissibility."State v. Broom, 40 Ohio St.3d at 282.
 {¶ 45} It is undisputed that Pam's testimony revealed that appellant committed five other uncharged rapes involving this same victim. Therefore, these rapes constitute "other acts" within the meaning of R.C. 2945.59 and Evid R. 404(B). Nonetheless, these acts are admissible because they are so blended or connected to the ones with which appellant was charged that the proof of one incidentally involves the others. State v.Wilkinson (1980), 64 Ohio St.2d 308, 316. Moreover, the other rapes concern events which are inextricably related to the charged offenses. State v. Curry (1975), 43 Ohio St.2d 66, 73. This "other acts" evidence shows that defendant committed similar crimes with the same victim within a period of time near to the crimes charged and that a similar system was used to commit both the crimes charged and the other acts. State v. Coleman (1988),37 Ohio St.3d 286, 292. Finally, the mention/evidence of the other rapes was permissibly used to establish an element of the charged crimes, in this case, force. State v. Wright, 4th Dist. No. 00CA39, 2001-Ohio-2473.
 {¶ 46} Appellant also challenges the admissibility of "other acts" evidence of violence, specifically, domestic violence and "whuppings." While these acts are not admissible under R.C.2945.59 and Evid.R. 404(B), they are pertinent to Pam's state of mind. State v. Kelly (1993), 89 Ohio App.3d 320, 323. In particular, they are relevant to the issue of Pam's failure to attempt to escape from appellant or to tell anyone about the rapes until she was removed from the home. Id.
 {¶ 47} Moreover, even if we were to assume, arguendo, that the admission of these "other acts" was error, it could not be regarded as plain error because the outcome of the trial would not have been different. State v. Mitts, 81 Ohio St.3d at 232. Pam's testimony, if deemed credible by the trier of fact, proved, beyond a reasonable doubt, that appellant, on two occasions occurring between March 1 and December 31, 2002, engaged in sexual conduct with a child under the age of 13 and that he compelled that child to submit by the use of threat of force. Accordingly, the trial court did not abuse its discretion in admitting the disputed evidence, or allowing the mention of the "other acts" by the prosecutors. Appellant's Assignment of Error No. II is found not well-taken.
 {¶ 48} Appellant's Assignment of Error No. III asserts that he was denied effective assistance of counsel under the Sixth andFourteenth Amendments to the United States Constitution and Article 1, Section 10, Ohio Constitution. In order to demonstrate ineffective assistance of counsel, an accused must satisfy a two part test. Strickland v. Washington (1984), 466 U.S. 668, 687. First, the defendant must show that his trial counsel's performance was so deficient that the attorney was not functioning as the counsel guaranteed by the Sixth Amendment of the United States Constitution. Id. Second, he must establish that counsel's "deficient performance prejudiced the defense." Id. The failure to prove any one prong of the Strickland
two-part test makes it unnecessary for a court to consider the other prong. State v. Madrigal, 87 Ohio St.3d 378, 389,2000-Ohio-448, citing Strickland at 697. In Ohio, a properly licensed attorney is presumed competent. State v. Lott (1990),51 Ohio St.3d 160, 174.
 {¶ 49} Appellant's arguments under this assignment of error relate to trial counsel's failure to object either to the admission of other acts evidence or counsel's alleged elicitation of other acts evidence. Because we have determined that the other acts evidence related to the uncharged alleged rapes and domestic violence was admissible or, in any event, that the admission of this evidence was harmless error, we must conclude that any violation of duties owed to his client by appellant's attorney with regard this matter was not prejudicial to appellant's defense. Therefore, appellant's Assignment of Error No. III is found not well-taken.
 {¶ 50} Appellant's Assignment of Error No. IV addresses the trial judge's purported error in declining to appoint new counsel upon his timely request. Appellant argues that this failure constituted ineffective assistance of counsel.
 {¶ 51} Although an indigent defendant has no right to have an attorney of his own choosing represent him, he is entitled to competent representation by his court-appointed attorney. Statev. Murphy, 91 Ohio St.3d 516, 523, 2001-Ohio-112. Consequently, to establish the good cause warranting the removal court-appointed counsel and the substitution of new counsel, a defendant is required to show that failure of the attorney-client relationship is so great that it jeopardizes that defendant'sSixth Amendment right to effective assistance of counsel. Statev. Coleman (1988), 37 Ohio St.3d 286,292 (Citation omitted.). In evaluating a request for new counsel, a court must "`balance `the accused's right to counsel of his choice [against] the public's interest in the prompt and efficient administration of justice.'"State v. Murphy, 91 Ohio St.3d at 523, quoting United Statesv. Jennings (C.A. 6, 1996), 83 F.3d 145, 148. When an indigent defendant complains about the adequacy of court appointed counsel's performance during the trial, it is the duty of the trial court to inquire into that complaint and make that inquiry a part of the record. State v. Deal (1967), 17 Ohio St.2d 17, syllabus.
 {¶ 52} The decision whether or not to remove court appointed counsel and allow substitution of new counsel is addressed to the sound discretion of the trial court, and its decision will not be reversed on appeal absent an abuse of discretion. Id. As set forth previously, an abuse of discretion implies an arbitrary, unreasonable, unconscionable attitude on the part of the court.State v. Adams, 62 Ohio St.2d at 157.
 {¶ 53} A review of the facts, as set forth infra, as related to appellant's arguments in this assignment of error neither reveals a lack of inquiry by the trial court upon appellant's requests for new counsel nor a total breakdown in communication between appellant and Dech to the point where these problems interfered with the preparation and presentation of appellant's defense. State v. Murphy, 91 Ohio St.3d at 523; State v.Furlow, 2d Dist. No. 03CA0058, 2004-Ohio-5279, at ¶ 16. Rather, appellant's complaints involve a disagreement between the attorney and client over trial tactics and strategy. This kind of disagreement does not warrant a substitution of counsel. Statev. Furlow at ¶ 17. Accordingly, the trial court did not abuse its discretion in denying appellant's requests for new counsel, and his Assignment of Error No. IV is found not well-taken.
 {¶ 54} The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Handwork, J. Pietrykowski, J. Parish, J. concur.
[1] The court below held a competency hearing prior to trial and determined that Pam was competent to testify.