DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-appellant, Walter J. Brown, appeals the December 15, 2005 judgment of the Williams County Court of Common Pleas which, following a jury trial, found that appellant had been convicted of rape, in violation of R.C. 2907.02(A)(1)(b), and sentenced him to a mandatory life sentence because the victim was less than ten years of age. For the reasons set forth herein, we affirm the trial court's judgment.
 {¶ 2} The relevant facts are as follows. On February 25, 2004, appellant was indicted on one count of rape, in violation of R.C. 2907.02(A)(1)(b). The indictment alleged that between the dates of June 18 and December 21, 2003, appellant engaged in sexual conduct, with a person, not his spouse, who was five years old.
 {¶ 3} On April 6, 2004, a hearing was held on appellant's motion to suppress the results of a polygraph examination and statements made during and after the examination. The parties agreed that the actual tests results and any expert testimony relative thereto were prohibited. The trial court ruled that the statement made to the examiner and Williams County Prosecutor's Investigator Todd Snyder were admissible but that a later statement made to Williams County Sheriff's Deputy Brian Ross was not admissible.
 {¶ 4} The matter of appellant's competency was addressed by the trial court and an examination by Court Diagnostic and Treatment Center was conducted. Appellant's counsel also had appellant examined by psychologist Dr. Richard Weiss. The court ultimately found appellant competent to stand trial but noted that appellant may have some communication problems due to his hearing deficit.
 {¶ 5} On December 12, 2005 the jury trial commenced. A brief synopsis of the testimony is as follows. The child victim testified that her babysitter's husband, Walter Brown, or "Papa" put his "boy" in her "girl," in her mouth, and in her butt. She also testified that appellant put his mouth on her girl and that he put his boy in her mouth. The child stated that appellant told her to keep it a secret
 {¶ 6} Renee, the child's mother, testified that Selma Brown, appellant's wife, babysat her daughter for approximately three months. Renee testified that her daughter complained that her girl was hurting and that it was very red; Renee initially thought that her daughter was not thoroughly wiping herself when using the bathroom. Renee testified that on January 5, 2004, while they were shopping, her daughter told her about the alleged rape.[1] During cross-examination, Renee admitted that she stated that after she was done with appellant she was going to go after appellant's house.
 {¶ 7} Todd Snyder, an investigator with the Williams County Prosecutor's Office, testified that during a conversation with appellant, which occurred on January 29, 2004, appellant stated that he placed his finger in the child's vagina.
 {¶ 8} Randall Schlievert, M.D., conducted a physical examination of the child on January 15, 2004. Schlievert testified that the exam was normal; however, this did not confirm or rule out abuse. Schlievert testified that in 95 to 98 percent of exams, the results are normal.
 {¶ 9} Julie Jones testified that she is a social worker and works with Dr. Schlievert. Jones stated that prior to Dr. Schlievert's exam she interviewed the child to get a medical history and discuss why she was at the office and what was going to happen. Jones, over objection, read from her notes taken during the interview.
 {¶ 10} Heidi Foster-Johnson testified that she is a licensed social worker specializing in trauma and loss. Foster-Johnson testified that she had counseled the child for nearly two years beginning in January 2004. A hearsay objection was raised regarding the child's history; Foster-Johnson was ultimately permitted to testify regarding the information the child gave her during the initial diagnostic assessment. Foster-Johnson testified that the child had symptoms consistent with post-traumatic stress disorder and, over objection, Foster-Johnson testified that she believed that the child had been sexually abused.
 {¶ 11} During appellant's case, several experts testified. Richard J. Ofshe, PhD. testified regarding various interrogation techniques and the risk of obtaining a false confession. Regarding appellant's confession that he placed his finger in the child's vagina, Ofshe testified that it was improper for Snyder to cease questioning appellant at that point; further questioning could have determined whether it matched the child's account.
 {¶ 12} Next, Katherine Okla, clinical psychologist, testified regarding child memory and suggestibility. Okla disputed Foster-Johnson's belief that the child displayed symptoms of post-traumatic stress disorder. Okla also questioned Jones' and Foster-Johnson's questioning of the child.
 {¶ 13} Regarding appellant's mental impairment, psychologist Richard Weiss testified that appellant had an IQ of 72, just three points above a mild form of retardation. Weiss diagnosed appellant with dementia.
 {¶ 14} Appellant's wife, Selma Brown, testified that the layout of their one-story home is very open and that you can see from one end to the other. Brown testified that she and appellant had been married 52 years and had three grown daughters. Appellant retired from General Motors in 1980, and did odd construction jobs.
 {¶ 15} During its rebuttal, the state presented two witnesses. Linda Taylor testified that she is a victim's advocate for Williams County Victims' Assistance. Taylor testified that she met with the child and the prosecutor in the courtroom on three occasions. At the first two meetings, which lasted approximately 30 minutes, the child "sat in every chair in the courtroom" and talked about her animals. Taylor stated that these visits were opportunities for the child to get comfortable in the courtroom. On her third visit to the courtroom, the child was asked some of the questions she would be asked at trial. Taylor testified that the child was not told how to answer; she was told that she needed to verbally answer the questions, say "I don't know" if she did not know an answer, and to tell the truth.
 {¶ 16} Cindy Brinkman testified that she is a social worker for the Williams County Department of Job and Family Services. Brinkman stated that she met with the child on January 6, 2004; the audiotape of their conversation was played to the jury and admitted into evidence. On the tape, the child tells Brinkman that appellant put his boy in her girl and that she put his boy in her mouth. She also stated that she saw appellant "pee" in his hand.
 {¶ 17} Thereafter, the jury found appellant guilty of rape of an individual under the age of ten and he was immediately sentenced to the mandatory term of life imprisonment. This appeal followed.
 {¶ 18} Appellant now raises the following six assignments of error:[2]
 {¶ 19} "Assignment of Error Number One: The trial court erred to the prejudice of Brown when it declared the alleged victim competent to testify.
 {¶ 20} "Assignment of Error Number Two: Brown was denied due process and a fair trial when the Court failed to grant Brown's trial counsel's motion for acquittal pursuant to Crim.R. 29 at the close of the State's case as the alleged victim failed to identify Brown as her assailant.
 {¶ 21} "Assignment of Error Number Three: The trial court erred in admitting the testimony of Heidi Foster-Johnson and Julie Jones as it was hearsay, there was no evidence the child understood the importance of truthfully relating her history and there was no recent fabrication, improper influence or motive.
 {¶ 22} "Assignment of Error Number Four: Brown was denied due process and a fair trial as guaranteed by both the United States and the Ohio Constitutions, when the State's witnesses improperly engaged in witness bolstering, by vouching for the veracity of the child witness and by invading the province of the jury by assuming the allegations of sexual abuse to be true.
 {¶ 23} "Assignment of Error Number Five: Brown was denied his constitutional right as guaranteed by the United States and Ohio Constitutions, to effective assistance of counsel when his attorney failed to protect Brown's rights at trial when Brown's trial counsel failed to seek a cautionary jury instruction when appropriate, failed to timely object to leading questions posed to the State's witnesses by the prosecutor, failed to object to the introduction of hearsay testimony, and failed to object to bolstering testimony of the State's witnesses, failed to object to expert testimony when no foundation had been established, and failed to object to the child's testimony when competency had not been established.
 {¶ 24} "Assignment of Error Number Six: The cumulative effect of the errors committed by the trial court and by Brown's trial counsel combined to deny Brown due process and a fair trial as guaranteed by the United States and Ohio Constitutions."
 {¶ 25} In appellant's first assignment of error he contends that at the competency hearing there was no evidence presented to show that the child, then seven years old, had the ability to receive accurate impressions, recollect the impressions, and to communicate what was observed. Particularly, appellant argues that the court should have inquired about events that occurred in the child's life about the time of the alleged offense.
 {¶ 26} We note that the determination of whether a child is competent to testify rests within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. State v. Clark, 71 Ohio St.3d 466, 469,1994-Ohio-43. An "abuse of discretion" is more than an error of law or of judgment, the term connotes that the court's attitude is unreasonable, arbitrary or unconscionable. State v. Adams
(1980), 62 Ohio St.2d 151, 157.
 {¶ 27} Evid.R. 601 provides: "Every person it competent to be a witness except: (A) Those of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." The Supreme Court of Ohio has determined that a trial court must hold a competency hearing before admitting the testimony of a child under ten years of age. State v. Said, 71 Ohio St.3d 473, 476, 1994-Ohio-402.
 {¶ 28} Pursuant to State v. Frazier (1991),61 Ohio St.3d 247, syllabus:
 {¶ 29} "In determining whether a child under ten is competent to testify, the trial court must take into consideration (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity and (5) the child's appreciation of his or her responsibility to be truthful."
 {¶ 30} In the present case, the record reflects that the trial court conducted an examination of the child to determine if she was able to receive just impressions of the facts and relate them truthfully. At trial, the child clearly answered the questions posed to her during direct and cross-examination. Although appellant questions the veracity of her testimony, including any inconsistencies, we firmly believe that the child was a competent witness. Thus, appellant's first assignment of error is not well-taken.
 {¶ 31} In appellant's second assignment of error he contends that the trial court erroneously denied his Crim.R. 29 motion for acquittal where the child failed to identify appellant as the assailant. We note that Crim.R. 29(A) provides that the trial court shall enter a judgment of acquittal "if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 32} We agree with appellant that the identification of the alleged perpetrator is an element that is essential in proving guilt. See Huron v. Holsapple (Aug. 8, 1997), 6th Dist. No. E-96-063. The following exchange occurred at the conclusion of the child's direct examination:
 {¶ 33} "Q: Do you know what Walter Brown looks like?
 {¶ 34} "A: Yes.
 {¶ 35} "Q: Do you see him in this courtroom today?
 {¶ 36} "A: Yes.
 {¶ 37} "Q: Would you stand up so you can see. Do you see him sitting there?
 {¶ 38} "A: (nods)
 {¶ 39} "Q: Let the record reflect that she has identified the defendant.
 {¶ 40} "THE COURT: Noted."
 {¶ 41} Appellant contends that the above dialogue was not sufficient to establish his identity; however, neither the state nor appellant's trial counsel objected to the child's identification.
 {¶ 42} Upon review, we must conclude that the identification evidence was sufficient. The trial court was satisfied with the identification as was the state and trial counsel. This court is limited to reviewing the testimony in the transcript and the items admitted into evidence; we are not able to place ourselves in the courtroom to observe the courtroom schematics and a witness's gestures and demeanor. Appellant's second assignment of error is not well-taken.
 {¶ 43} Appellant, in his third assignment of error, contends that the trial court erroneously admitted the hearsay testimony of Julie Jones and Heidi Foster-Johnson. Specifically, appellant argues that the testimony did not fall under the hearsay exception in Evid.R. 803(4), statements for medical diagnosis or treatment, or Evid.R. 801(D)(1)(b), consistent statements admissible to rebut an express or implied charge of recent fabrication. Initially, we note that questions regarding the admissibility of evidence are left to the sound discretion of the trial court and will not be reversed absent a showing of an abuse of discretion. State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. We will examine each witness's testimony in turn.
 {¶ 44} First, the statements made by the child to Julie Jones were admitted into evidence under Evid.R. 803(4) which provides:
 {¶ 45} "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."
 {¶ 46} Appellant contends that in order for the child's statements to be admissible under Evid.R. 803(4), the child must have understood that her history would form the basis for her diagnosis or treatment. Disputing this assertion the state relies on State v. Dever, 64 Ohio St.3d 401, 1992-Ohio-41. In Dever,
the Supreme Court of Ohio held that:
 {¶ 47} "Statements made by a child during a medical examination identifying the perpetrator of sexual abuse, if made for purpose of diagnosis and treatment, are admissible pursuant to Evid.R. 803(4), when such statements are made for the purposes enumerated in that rule." Id. at paragraph two of the syllabus.
 {¶ 48} The Dever court explained that, historically, the basis for the medical diagnosis and treatment exception was the motivation of an individual to seek a diagnosis and treatment and the likelihood that he or she would give accurate information in furtherance thereof. Id. at 407. However, the court noted that "the focus must be slightly different when a child is involved." Id. at 410. The court explained that in determining the admissibility of such statements:
 {¶ 49} "The trial court should consider the circumstances surrounding the making of the hearsay statement. If the trial court finds in voir dire that the child's statements were inappropriately influenced by another, then those statements would not have been made for the purpose of diagnosis or treatment. This inquiry will vary, depending on the facts of each case. For example, the trial court may consider whether the child's statement was in response to a suggestive or leading question (as was the case in Idaho v. Wright), and any other factor which would affect the reliability of the statements (such as the bitter custody battle in State v. Boston). If no such factors exist, then the evidence should be admitted. The credibility of the statements would then be for the jury to evaluate in its role as factfinder. In addition, the witness whose testimony brings in the child's hearsay statement can be cross-examined about the circumstances surrounding the making of the statement. But if the trial court discerns the existence of sufficient factors indicating that the child's statements were not made for the purpose of diagnosis or treatment, the statements must be excluded as not falling within Evid.R. 803(4)." Id.
 {¶ 50} In the present case, the child was not subject to voir dire as directed in Dever. However, several Ohio courts, including this court, have held that where a child victim testifies at trial and is subject to cross-examination the accused's right to confrontation is not violated and no prejudicial error occurred. State v. Lugli (Aug. 30, 1996), 6th Dist. No. E-95-025, citing State v. Kelly (1994),93 Ohio App.3d 257. See, also, State v. Ervin, 8th Dist. No. 80473, 2002-Ohio-4093. Accordingly, we find that the statements were properly admitted under Evid.R. 803(4).
 {¶ 51} Appellant also asserts that the child's hearsay statements made to Heidi Foster-Johnson were not admissible under either Evid.R. 803(4) or Evid.R. 801(D)(1)(b).[3] InLugli, supra, this court also considered the admissibility of hearsay statements made to the child victim's therapist over a nine-month course of therapy. We noted that "`* * * the spirit and purpose of Evid.R. 803(4) are complied with when a clinical psychologist is allowed to testify about statements a child victim of crime makes during the course of psychological treatment.'" Id., quoting State v. Ulis (1993),91 Ohio App.3d 656, 663. We then concluded that because the child victim testified at trial, the statements were properly admitted. Id.
 {¶ 52} In this case, as in Lugli, Foster-Johnson testified regarding the child's nearly two-year course of therapy including her initial symptoms and the progress she had made. Accordingly, we find that the trial court did not abuse its discretion in allowing the testimony. Appellant's third assignment of error is not well-taken.
 {¶ 53} In appellant's fourth assignment of error he contends that multiple state's witnesses improperly vouched for the veracity of the alleged child victim. The witness testimony at issue came from Renee, Heidi Foster-Johnson, and Dr. Randall Schlievert.
 {¶ 54} Renee, the child's mom, first testified that her daughter told her that she was not lying. Trial counsel objected to this testimony; the objection was sustained and the answer was stricken. Renee further stated that, although not responsive to the question, her daughter would never make up a story like that." Appellant also complains of Renee's testimony that she looks up to her daughter and that she is very smart.
 {¶ 55} Arguably, Renee's testimony that her daughter would never fabricate a story about sexual abuse is improper witness bolstering. However, Renee's testimony, as the child's mother and predisposed to believe her daughter's allegations, does not have the same weight as an expert's testimony. Moreover, the defense theory was that Renee was using her daughter for financial gain. Accordingly, any error as to this testimony was harmless.
 {¶ 56} Appellant next complains of certain testimony from therapist Heidi Foster-Johnson and Dr. Randall Schlievert. We first note that in State v. Boston (1989), 46 Ohio St.3d 108, syllabus, the Supreme Court of Ohio held that "[a]n expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant." The Boston court further held that opinion testimony that a child was sexually abused was admissible because such testimony would aid jurors in making their determination. Id. at 128. However, the court also held that an expert's opinion that the child had not "fantasized" her abuse or that she had not been "programmed to make accusations" was improper witness bolstering. Id. at 128-129.
 {¶ 57} In State v. Stowers, 81 Ohio St.3d 260,1998-Ohio-632, the court clarified its Boston holding stating that Boston "does not proscribe testimony which is additional support for the truth of the facts testified to by the child, or which assists the fact finder in assessing the child's veracity." (Emphasis in original.) Id. at 263. The Stowers'
expert's testimony included an explanation of behaviors often seen in children that have been sexually assaulted including recantation of accusations and delayed disclosure. Id. The expert testified that "even though the children changed their stories, her assessment that they had been abused did not change. Id.
 {¶ 58} Keeping the Boston and Stowers standards in mind, we turn to the expert testimony at issue. Appellant disputes the admissibility of Heidi Foster-Johnson's testimony, read from her intake notes that the first goal of the child's therapy was "to process her sexual abuse." Appellant further disputes Foster-Johnson's testimony that the child displayed symptoms of post-traumatic stress disorder and that, in her opinion and based on her observations of other children who had been sexually abused, the child had been sexually abused.
 {¶ 59} Upon review of Foster-Johnson's testimony we find that her testimony regarding symptoms of post-traumatic stress disorder and typical responses of children who have alleged sexual abuse was permissible as such testimony would be useful to the jury in making its determination. Further, pursuant toBoston, supra, Foster-Johnson's statement that it was her opinion that the child was sexually abused was admissible. Although Foster-Johnson's testimony that the first treatment goal was to have the child process her sexual abuse may have been improper, no objection was made to the admission of the evidence and we must determine whether it was plain error. Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error is error that substantially affects the outcome of the trial. State v. Slagle (1992),65 Ohio St.3d 597, 605. "The appellate court must examine the error asserted by the defendant-appellant in light of all of the evidence properly admitted at trial and determine whether the jury would have convicted the defendant even if the error had not occurred." Id.
 {¶ 60} Upon review, we cannot say that absent the above testimony appellant would not have been convicted. The child testified regarding the alleged events, social worker Julie Jones testified regarding the intake interview. An audiotape interview of the child was also admitted. Finally, Todd Snyder testified that appellant admitted to placing his finger in the child's vagina.
 {¶ 61} Appellant next argues that Dr. Randall Schlievert's testimony that in studies 95 to 98 percent of children who have been evaluated for sexual abuse will have normal findings was an improper "backdoor" comment on the child's veracity. We disagree. Dr. Schlievert's testimony was proffered to show that the fact that the child's examination results were normal did not mean that she had not been abused.
 {¶ 62} Appellant also contends that Dr. Schlievert's testimony, during cross-examination, that Julie Jones' interview notes were accurate was improper. Upon review of the entire exchange we find that Dr. Schlievert was merely responding to the question of why the office did not videotape or audiotape interviews. Further, Jones' notes were not admitted into evidence.
 {¶ 63} Based on the foregoing, we find that although there were some instances of improper witness bolstering, the errors did not affect the outcome of the trial. Appellant's fourth assignment of error is not well-taken.
 {¶ 64} Appellant, in his fifth assignment of error, argues that his trial counsel was ineffective by failing to object to the court's finding of competency, failing to object to improper testimony, failing to object to improper expert testimony, and failing to object to leading questions.
 {¶ 65} The standard for determining whether a trial attorney was ineffective requires appellant to show: 1) that the trial attorney made errors so egregious that the trial attorney was not functioning as the "counsel" guaranteed appellant under the Sixth Amendment, and 2) that the deficient performance prejudiced appellant's defense. Strickland v. Washington (1984),466 U.S. 668, 686-687, 104 S.Ct. 2052, 80 L.Ed.2d 674. In essence, appellant must show that the proceedings, due to his attorney's ineffectiveness, was so demonstrably unfair that there is a reasonable probability that the result would have been different absent his attorney's deficient performance. Id. at 693. Furthermore, a court must be "highly deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" in reviewing a claim of ineffective assistance of counsel. Id. at 689. A properly licensed attorney in Ohio is presumed to execute his or her duties in an ethical and competent manner. State v. Hamblin
(1988), 37 Ohio St.3d 153, 155-56. Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel. State v. Phillips,74 Ohio St.3d 72, 85, 1995-Ohio-171. Even if the wisdom of an approach is debatable, "debatable trial tactics" do not constitute ineffective assistance of counsel. Id. Finally, reviewing courts must not use hindsight to second-guess trial strategy, and must bear in mind that different trial counsel will often defend the same case in different manners. Strickland, supra at 689;State v. Keenan, 81 Ohio St.3d 133, 152, 1998-Ohio-459.
 {¶ 66} Appellant first contends that failing to object to the court's determination of the child's competency was error. We disagree. The child was seven years old on the date of the trial. It is obvious from the competency hearing and the child's trial testimony that her competency was not a major issue in this case.
 {¶ 67} Appellant next complains that counsel was ineffective in failing to object to Heidi Foster-Johnson's testimony regarding post-traumatic stress disorder behavioral indicators and suggestibility because she was never qualified as an expert. As noted by appellant, when Foster-Johnson first began testifying about symptoms of post-traumatic stress disorder appellant's counsel made an objection which was sustained. At that point, the state reviewed Foster-Johnson's formal training in the area and, after setting the foundation, elicited her testimony that such a diagnosis falls within her licensure as an independent social worker.
 {¶ 68} Regarding expert testimony, "[i]t is a general rule that the expert witness is not required to be the best witness on the subject. * * *. The test is whether a particular witness offered as an expert will aid the trier of fact in the search for the truth." (Citations omitted.) Alexander v. Mt. Carmel Med.Ctr. (1978), 56 Ohio St.2d 155, 159. Certainly, based on Foster-Johnson's training and experience, her testimony regarding behaviors frequently observed in children who have been sexually abused would aid the jury. Accordingly, trial counsel's failure to renew the objection did not have an effect on the trial's outcome.
 {¶ 69} Next, appellant claims that Renee was permitted to testify, without objection, concerning "behavioral indicators" she observed. We disagree. Renee, as the child's mother, was testifying about her observations regarding the subsequent changes in her daughter's behavior. We previously determined that Renee's statement that her daughter would never fabricate such a story was improper but did not rise to the level of plain error. Here we conclude that that had trial counsel objected to Renee's testimony, there is no reasonable probability that appellant would not have been convicted.
 {¶ 70} Regarding Dr. Schlievert's testimony we found, infra, that the percentage testimony and the testimony about the accuracy of Julie Jones' notes were not instances of improper witness bolstering; accordingly, trial counsel's failure to object did not render his representation ineffective.
 {¶ 71} Appellant also argues that trial counsel was ineffective when he failed to object to the testimony of the state's rebuttal witness, Cindy Brinkman, and the admission of her audiotape interview with the child. According to the state, the testimony and tape were admissible under Evid.R. 801(D)(1)(b), as evidence disproving the defense theory of recent fabrication or improper motive. According to the state, the child's trial testimony and the interview, taped shortly after the allegations were reported, were very consistent. Upon review, we cannot say the trial counsel was ineffective in failing to object to the testimony or evidence.
 {¶ 72} Finally, appellant agues that trial counsel failed to take extra measures to ensure that he comprehended the testimony and was able to assist in his defense. Appellant's argument is based on the testimony adduced at his competency hearing. During the hearing, testimony was presented that appellant has low mental functioning and the onset of dementing disorders; appellant also has a hearing deficit. In the absence of any specific allegations and upon review of the record, we find no indication that trial counsel failed to take extra measures to ensure that appellant was aware of and an active participant in the proceedings.
 {¶ 73} Based on the foregoing, we find that appellant's counsel was not ineffective when he failed to object to certain testimony and the admission of the audiotape interview. Appellant's fifth assignment of error is not well-taken.
 {¶ 74} In appellant's sixth and final assignment of error he contends that the cumulative errors of the trial court and counsel denied appellant his right to due process and a fair trial.
 {¶ 75} Addressing the issue of cumulative error, the Supreme Court of Ohio has held that a conviction may be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each single instance of error does not individually constitute cause for reversal. State v. Garner, 74 Ohio St.3d 49, 64,1995-Ohio-168, citing State v. DeMarco (1987),31 Ohio St.3d 191, paragraph two of the syllabus. In order to show that the effect of the errors was cumulative and prejudicial so as to deny him a fair trial, appellant must show that there is a reasonable probability that without these errors, the outcome of the trial would have been different. State v. Moreland (1990),50 Ohio St.3d 58, 69.
 {¶ 76} Upon review of all the evidence presented in this case, we cannot say that the effect of a few harmless errors with regard to witness bolstering was prejudicial and denied appellant a fair trial. Appellant's sixth assignment of error is not well-taken.
 {¶ 77} On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Williams County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Williams County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Handwork, J., Pietrykowski, J., Parish, J. concur.
[1] Trial counsel objected to this testimony and the jury was cautioned that it was not to be considered for its truth; rather, that it was the genesis of the investigation.
[2] Appellant's seventh assignment of error was withdrawn.
[3] Evid.R. 801(D)(1)(b) provides that [a] statement is not hearsay if: * * *. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is: * * * (b) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive."