DECISION AND JUDGMENT ENTRY
{¶ 1} This is a consolidated appeal from two judgments of the Lucas County Court of Common Pleas that found appellant guilty of two counts of rape, two counts of gross sexual imposition and three counts of corruption of a minor. The trial court also found that one of the offenses of rape was committed while appellant was under post-release control for a prior conviction. Appellant was sentenced to a total of 27 and one-half years incarceration in addition to 846 days for the post-release control violation. For *Page 2 
the following reasons, the judgments of the trial court are affirmed in part and reversed in part.
 {¶ 2} Appellant sets forth the following assignments of error:
 {¶ 3} "Assignment of Error No. 1:
 {¶ 4} "The trial court committed plain error requiring reversal by permitting testimony of uncharged misconduct purportedly committed by the appellant.
 {¶ 5} "Assignment of Error No. 2:
 {¶ 6} "The trial court committed plain error requiring reversal by permitting unqualified and improper opinion testimony by Detective Gina Lester.
 {¶ 7} "Assignment of Error No. 3:
 {¶ 8} "Appellant was denied effective assistance of counsel.
 {¶ 9} "Assignment of Error No. 4:
 {¶ 10} "The trial court committed reversible error by excluding impeachment evidence offered by the appellant.
 {¶ 11} "Assignment of Error No. 5:
 {¶ 12} "The trial court committed reversible error by excluding evidence of relevant sexual conduct between the appellant and Michelle Frost.
 {¶ 13} "Assignment of Error No. 6:
 {¶ 14} "The cumulative effect of the errors of the trial court and the ineffectiveness of appellant's counsel combined to deny appellant a fair trial guaranteed by the United States and Ohio Constitutions. *Page 3 
 {¶ 15} "Assignment of Error No. 7.
 {¶ 16} "The trial court committed reversible error when it sentenced appellant to maximum, consecutive sentences and imposed an additional 846 days for a post release control violation."
 {¶ 17} The undisputed facts relevant to the issues raised on appeal are as follows. Appellant was prosecuted under two indictments filed several months apart alleging numerous acts of sexual misconduct over a period of approximately 14 years with his niece Michelle Frost, who is now an adult. On February 24, 2005, a six-count indictment was filed in case No. CR05-1383. Counts one and two charged appellant with gross sexual imposition in violation of R.C. 2907.05(A)(4) occurring between October 16, 1991, and August 12, 1993. Count three charged appellant with rape in violation of R.C. 2907.02(A)(1)(b) and alleged that the offense occurred between July 9, 1996, and October 15, 1997. Counts four, five and six charged appellant with corruption of a minor in violation of R.C. 2907.04 and alleged that the offenses occurred between October 15, 1997, and August 29, 2000. Appellant entered pleas of not guilty to all counts.
 {¶ 18} In a separate indictment filed October 21, 2005, in case No. CR05-3247, appellant was charged with one count of rape in violation of R.C. 2907.02(A)(2). The indictment charged that the rape occurred on December 8, 2004. Appellant entered a plea of not guilty.
 {¶ 19} The two cases were called for trial before a jury on February 6, 2006. Testimony relevant to the issues raised on appeal was as follows. *Page 4 
 {¶ 20} Michelle testified that she was raised by her grandmother since the age of four because her parents were unable to care for her. Appellant lived with them. She stated that when she was four years old, appellant began to "touch her" on a daily basis. He would make her go to his bedroom and sit on his lap playing video games. While she sat on appellant's lap, he would touch her "all over," including her vagina. Other times, appellant would go into Michelle's bedroom and touch her while her grandmother was out. Michelle testified that she was afraid to say anything because appellant threatened to kill her. She further testified that appellant moved out of the house when she was eight years old. When she was ten, she told her grandmother what her uncle had been doing to her.
 {¶ 21} When Michelle was 12 years old, appellant returned to the home. At that time, Michelle's grandmother confronted him. Michelle testified that appellant said he would stop, but the abuse continued. When Michelle told her grandmother that the abuse was continuing, her grandmother again confronted appellant; when she did, appellant told her to sit on the couch and took Michelle into the kitchen. He brandished a knife and told Michelle he was not going to stop what he was doing, but that she was to tell her grandmother that he had promised he would. Michelle did as she was told. Appellant then began forcing Michelle to perform oral sex. By the time she was 14, appellant began forcing her to have vaginal intercourse with him on a daily basis. Michelle testified she did not tell anyone about the abuse at that time because appellant threatened to kill her, saying he would bury her in the back yard and no one would ever find her. *Page 5 
 {¶ 22} When Michelle was 16 years old, appellant left again. He returned in August 2004, when she was 19. Within a day, he began to abuse her again. She testified that appellant would play "mind games" and torture her. On one occasion, he made her sit in a chair for three hours and then had intercourse with her. Michelle was on probation at that time and appellant would not let her leave the house unless she had an appointment with her probation officer. A few days before Michelle left the house permanently, appellant forced her to go into an empty bedroom and have intercourse with him. She testified that appellant made her lie on the floor, urinated on her two times, dumped cigarette ashes on her face and poured Kool-Aid over her. The following day, December 9, 2004, Michelle told her probation officer about the most recent assault and the years of abuse. Her probation officer immediately arranged for Michelle to go to a shelter and to be examined at the hospital. Two police officers escorted Michelle from the hospital to her house so that she could retrieve her clothing. The officers found the shirt she was wearing at the time of the assault. The shirt was marked as a state's exhibit and Michelle identified the various urine, ash and Kool-Aid stains on it.
 {¶ 23} The state also presented the testimony of Michelle's probation officer, Amanda Wilson. Wilson testified that Michelle disclosed the abuse at her December 9, 2004 appointment. She stated that Michelle was very upset when she began talking but appeared relieved when she was finished.
 {¶ 24} Linsey Windau, a forensic scientist with the Ohio Bureau of Criminal Identification and Investigation, testified that she received several items for testing in this *Page 6 
case. Windau received a sample of appellant's DNA, the rape kit used during Michelle's hospital exam, and a t-shirt. She testified that the sperm on Michelle's vaginal swab contained appellant's DNA. The t-shirt tested positive for urine but she was unable to test it for DNA because the fabric had dried.
 {¶ 25} Toledo Police Officer Brian Mizer testified that he interviewed appellant on April 4, 2005. Mizer stated that when he asked appellant if he had ever threatened Michelle, appellant said he was going to "kick her ass." Appellant also denied ever having sexual intercourse with Michelle.
 {¶ 26} The jury returned verdicts of guilty on all counts and sentence was imposed on March 22, 2006. In case No. CR05-1383, appellant was sentenced to two years on counts one and two (gross sexual imposition), nine years on count three (rape), and eighteen months each on counts four, five and six (corruption of a minor). In case No. CR05-3247, appellant was sentenced to 10 years on the rape charge. All sentences were ordered served consecutively. In addition, appellant was ordered to serve 846 days for a post-release control violation, consecutive to the other sentences.
 {¶ 27} In his first assignment of error, appellant asserts the trial court committed plain error by permitting testimony regarding "other acts" of sexual conduct between himself and the victim. Appellant couches his argument in terms of plain error because trial counsel did not object to the testimony. Since there was in fact no objection, our review of the alleged improper testimony is discretionary and limited to plain error only. *Page 7 
 {¶ 28} Crim.R. 52(B) provides that "* * * plain errors or defects affecting substantial rights may be noticed although they are not brought to the attention of the trial court." However, this court has held that "* * * notice of plain error must be taken with the utmost caution, under exceptional circumstances, and only in order to prevent a manifest miscarriage of justice. In order to prevail on a claim governed by the plain error standard, appellant must demonstrate that the outcomeof his trial would clearly have been different but for the errors healleges." State v. Jones, 6th Dist. No. L-05-1101, 2006-Ohio-2351, ¶ 72. (Citations omitted. Emphasis added.)
 {¶ 29} Specifically, appellant now objects to Michelle's testimony about instances in which he sexually assaulted her over the years in addition to the seven offenses for which he was indicted and convicted. Appellant concludes that the jury impermissibly based its verdict on that evidence.
 {¶ 30} To accept appellant's argument would be to agree that Michelle Frost's testimony should have been restricted to such an extent that she was prevented from making any reference whatsoever to the many unindicted instances wherein appellant sexually abused her over a period of approximately 13 years. For the following reasons, we find that the fact that the state chose to indict appellant for only seven crimes against Michelle, even though she reported many more instances, did not require the trial court to prevent Michelle from making any reference to the other acts of sexual assault.
 {¶ 31} In order to permit the admission of "other acts," it must be demonstrated by substantial evidence that the defendant was the perpetrator of the other acts. State v. *Page 8 Broom (1988), 40 Ohio St.3d 277, 282-283. Also, the other acts evidence must tend to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Evid.R. 404(B); R.C. 2945.59. Such evidence may also be introduced for any other relevant purpose. Evid.R. 404(B).
 {¶ 32} It is undisputed that Michelle's testimony revealed appellant committed numerous other uncharged sexual assaults against her. Those assaults constitute "other acts" within the meaning of R.C. 2945.59 and Evid.R. 404(B). Nonetheless, the "other acts" in this case were admissible because they were so blended with or connected to the ones with which appellant was charged that the proof of one incidentally involved the other. See State v. Wilkinson (1980), 64 Ohio St.2d 308,316. Moreover, the "other assaults" concern events which are inextricably related to the charged offenses. See State v. Curry (1975),43 Ohio St.2d 66, 73. This "other acts" evidence shows that appellant committed similar crimes against the same victim within a period of time near to the crimes charged and that a similar system was used to commit both the crimes charged and the other acts. See State v. Coleman (1988),37 Ohio St.3d 286.
 {¶ 33} We note at the outset that extensive testimony in this case demonstrated that appellant was the perpetrator of the "other acts." InState v. Triplett, 6th Dist. No. L-04-1135, 2006-Ohio-5465, this court approved the admission of evidence establishing that the defendant had engaged in sexual conduct with his minor victim on numerous occasions over a ten-month period, although the indictment in that case charged only two *Page 9 
counts. Michelle's testimony in this case revealed that appellant committed many other acts of sexual assault against her within a period of time near to the crimes charged.
 {¶ 34} We further note that, even if admission of the testimony constituted plain error, we could not say that the outcome of the trial would have been different but for the victim's testimony relating other instances of sexual abuse by appellant. As demonstrated by the testimony summarized above, there simply was overwhelming evidence that appellant committed the offenses for which he was charged.
 {¶ 35} Thus, we find appellant's first assignment of error not well-taken.
 {¶ 36} In his second assignment of error, appellant asserts that the trial court committed plain error by permitting unqualified and improper opinion testimony by Detective Gina Lester. This court is required to apply the plain error standard to appellant's argument because trial counsel did not object to the testimony. See Crim.R. 52(B); State v.Jones, supra. In support of this claimed error, appellant asserts that Detective Lester possessed no expertise in many of the subjects about which she testified and provided little aid to the trier of fact. Appellant characterizes the detective's testimony as wandering, and argues that it was aimed at bolstering Michelle's credibility.
 {¶ 37} In State v. Boston (1989), 46 Ohio St.3d 108, the Supreme Court of Ohio held that in cases involving alleged child abuse, "the use of expert testimony is perfectly proper and such experts are not limited just to persons with scientific or technical knowledge but also includeother persons with `specialized knowledge' gained through experience,training or education." Boston at 126. (Emphasis added.) *Page 10 
 {¶ 38} Boston held that such experts may not testify as to their opinion concerning the veracity of the statements of a child victim, but may offer their opinion as to whether the child was abused, and may provide other testimony which would assist the jury in reaching a verdict. Boston at 128. We note that in this case, Detective Lester did not offer an opinion as to whether Michelle was sexually abused.
 {¶ 39} In State v. Stowers, 81 Ohio St.3d 260, 1998-Ohio-632, the court clarified its earlier holding, stating that Boston "does not proscribe testimony which is additional support for the truth of the factstestified to by the child, or which assists the factfinder in assessing the child's veracity." (Emphasis in original.) Id., 263. The expert's testimony in Stowers included an explanation of behaviors often seen in children that have been sexually assaulted, including recantation of accusations and delayed disclosure. Id.
 {¶ 40} Citing Boston and Stowers, this court recently held that testimony similar to that challenged in this case was admissible as an aid to the jury in understanding the case. State v. Brown, 6th Dist. No. WM-05-019, 2006-Ohio-5769. In Brown, the jury heard a therapist testify that a child rape victim exhibited typical symptoms of post-traumatic stress and that, in her opinion and based on her observations of other children who had been sexually abused, the child had been subjected to sexual abuse.
 {¶ 41} Keeping Boston, Stowers, and Brown in mind, we turn to the expert testimony at issue in this case. Appellant disputes the admissibility of Detective Lester's testimony based upon what he perceives as her "limited qualifications." Appellant argues on appeal that the detective had no expertise in any of the areas about which she testified *Page 11 
and attempts to minimize the detective's "asserted qualifications," which included 21 years as a police officer and six years investigating sex offenses. However, we note that defense counsel stipulated to the detective's qualifications in the area of sexual assault and sexual abuse investigation. The detective then testified as to her investigation of the case. In addition to discussing her investigation of the allegations in this case, the detective explained several common issues in child sexual abuse cases, including "re-victimization," "conditioning" and "delayed reporting." In response to the prosecutor's questioning, Detective Lester explained that re-victimization can occur when a victim is faced with recounting her story multiple times during the investigation of a crime and at trial; the detective did not claim that Michelle was re-victimized in this case. Lester also testified that an individual who molests a young child sometimes "grooms" or "conditions" the child in an attempt to condition him or her over time to accept the molester's behavior. The detective did not offer a conclusion as to whether Michelle was "conditioned" in this case. Further, the detective testified that delayed reporting or delayed disclosure occurs when a victim does not report abuse immediately and explained some possible reasons for such a delay, including fear, shame and embarrassment.
 {¶ 42} We find that Detective Lester possesses a degree of "specialized knowledge" of child sexual abuse and sexual abuse investigations acquired through on-the-job experience and training. Further, upon full review of the record, we cannot say that absent the detective's testimony appellant would not have been convicted. The jury *Page 12 
also heard extensive testimony from Michelle regarding the alleged events, from her probation officer as to the information Michelle disclosed on December 9, 2004, and from the forensics expert as to incriminating DNA evidence. Based on all of the foregoing, admission of the testimony was not plain error and appellant's second assignment of error is not well-taken.
 {¶ 43} Appellant's third assignment of error asserting ineffective assistance of counsel will be addressed later in this decision.
 {¶ 44} In his fourth assignment of error, appellant asserts that the trial court erred by excluding impeachment evidence offered during cross-examination of the victim. "The scope of cross-examination and the admissibility of evidence during cross-examination are matters which rest in the sound discretion of the trial judge. Thus, when the trial court determines that certain evidence will be admitted or excluded from trial, it is well established that the order or ruling of the court will not be reversed unless there has been a clear and prejudicial abuse of discretion." Calderon v. Sharkey (1982), 70 Ohio St.2d 218, 222, quotingO'Brien v. Angley (1980), 63 Ohio St.2d 159, 163. To constitute an abuse of discretion, a ruling must be more than legal error; it must be unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217.
 {¶ 45} Evid.R. 608(B) vests a trial court with discretion to allow cross-examination about specific instances of conduct of a witness "if clearly probative of truthfulness or untruthfulness." See, also,State v. Brooks, 75 Ohio St.3d 148, 151, 1996- *Page 13 
Ohio-134. Consequently, there is a requirement of a "high degree of probative value of instances of prior conduct as to truthfulness or untruthfulness of the witness before the trial court will allow such cross-examination." State v. Miller, 11th Dist. App. No. 2004-T-0082,2005-Ohio-5283, ¶ 36.
 {¶ 46} During cross-examination of Michelle, defense counsel attempted to introduce evidence of specific conduct which counsel claimed was relevant to her character for truthfulness. When the state objected, defense counsel explained at sidebar that the line of questioning related to whether Michelle had sometime in the past attempted to solicit money for a charity without authority to do so and whether she had forged and cashed one of her grandmother's checks. The state argued that Michelle had not been charged with any crime as a result of the alleged illegal activities and that the probative value of the evidence would be outweighed by its prejudicial effect. The trial court sustained the state's objection on the basis of Evid.R. 608.
 {¶ 47} Appellant now argues that the trial court's exclusion of the proffered evidence was arbitrary and limited his ability to effectively cross-examine the most important witness. At trial, defense counsel stated he anticipated offering grandmother's testimony as to the two incidents. After listening to defense counsel explain the nature of the evidence it wanted to introduce, the trial court determined that it was not clearly probative of the witness's truthfulness. We agree. Defense counsel's proposed line of questioning would not have assisted the jury in determining Michelle's credibility in this case involving allegations of sexual abuse and rape. Michelle's extensive testimony as to *Page 14 
abuse suffered at the hands of appellant afforded the jury ample opportunity to assess her credibility. We are unable to find that the trial court's ruling was unreasonable, arbitrary or unconscionable. Accordingly, appellant's fourth assignment of error is not well-taken.
 {¶ 48} In his fifth assignment of error, appellant asserts the trial court erred by ruling that evidence of "relevant sexual conduct" between Michelle and appellant would be excluded from trial. Prior to trial, appellant filed a motion requesting a hearing pursuant to R.C. 2907.02
on the admissibility of certain evidence of sexual activity of the victim. The record reflects that on February 2, 2006, a hearing was held on that motion as well as on a motion in limine filed by the state. The court's docket reflects that the motions were denied in part and granted in part and that the court's rulings were made on the record in open court. There is no written judgment entry in the record. Additionally, appellant has not provided a transcript of that hearing. Appellant states in his brief that this assignment of error is made to preserve the issue. He indicates his intention to file a motion to supplement the record with the hearing transcript as well as a motion to supplement his brief. However, no motions to supplement were filed with this court. Therefore, appellant's fifth assignment of error is found not well-taken.
 {¶ 49} We will now address appellant's third assignment of error in which he asserts ineffective assistance of trial counsel.
 {¶ 50} To prevail on a claim of ineffective assistance of counsel, appellant must show counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. This standard *Page 15 
requires appellant to satisfy a two-part test. First, appellant must show counsel's representation fell below an objective standard of reasonableness. Second, appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different when considering the totality of the evidence that was before the court. Strickland v. Washington (1984),466 U.S. 668. This test is applied in the context of Ohio law that states that a properly licensed attorney is presumed competent.State v. Hamblin (1988), 37 Ohio St.3d 153.
 {¶ 51} Appellant first argues that counsel was ineffective for failing to object to the "other acts" evidence elicited by the state during Michelle's testimony and for not requesting a limiting instruction regarding the evidence. This court addressed the issue of the "other acts" evidence under appellant's first assignment of error and found that the testimony was admissible pursuant to Evid.R. 404(B), State v,Coleman, supra, and State v. Triplett, supra. Because the testimony was admissible, trial counsel was not ineffective for failing to object. Therefore, this argument is without merit.
 {¶ 52} Appellant also argues that trial counsel was ineffective for failing to object to Detective Lester's "claimed expertise" and "expansive opinions." Again, we addressed this issue under appellant's second assignment of error and found that the detective's testimony was admissible. Therefore, counsel was not ineffective for failing to object and this argument is also without merit.
 {¶ 53} Appellant next argues that counsel was ineffective for failing to object to questions which he claims were leading and which, he asserts, contained "conclusory *Page 16 
allegations" of sexual misconduct by appellant. Appellant claims the prosecutor repeatedly asked Michelle questions "presupposing" that he sexually abused her. Each portion of the transcript cited by appellant contains explicit testimony from Michelle as to the sexual abuse. In each instance, the prosecutor asked follow-up questions to Michelle's testimony designed to elicit additional evidence necessary to prove the charges brought against appellant. It appears that in order to satisfy appellant's stringent standards, the prosecutor would have been required to insert the term "alleged" in each and every follow-up question asked of Michelle after she testified to a particular act of abuse. Appellant argues that counsel's failure to object allowed the jurors to believe that the "conclusions asserted by the state" in its questions were true. First, the state's questions did not constitute "conclusory allegations;" they were logical follow-up to Michelle's statements. Second, appellant assumes the jury was incapable of hearing all of the evidence, which included much more than just Michelle's testimony, and reaching its own conclusions. Third, in this instance counsel's decision not to object can be attributed to trial strategy. Repeatedly objecting every time the state asked Michelle about one of the many acts of abuse would have risked emphasizing the particular testimony. Often, after an objection and brief exchange between counsel and the court, the witness asks for the question to be repeated, which is not always in the defendant's best interest. We find that counsel was not ineffective for failing to object every time the prosecutor asked Michelle follow-up questions about the specific acts of abuse to which she testified. *Page 17 
 {¶ 54} Appellant also argues that counsel should have objected to three instances of testimony which he asserts constituted hearsay. First, appellant claims counsel should have objected when Michelle testified that after she told her grandmother about the abuse, her grandmother talked to appellant and he said he would stop. A close examination of this testimony shows that it did not constitute hearsay. Michelle stated: "* * * she confronted him about it, and he said that he was going to stop." By way of this testimony, Michelle was relating what appellant said. As such, the testimony was admissible as the statement of a party opponent under Evid.R. 801(D)(2) and defense counsel was not ineffective for failing to object.
 {¶ 55} Next, appellant asserts that counsel should have objected when Detective Lester testified that grandmother told her appellant admitted to the sexual abuse. Contrary to appellant's claim, defense counsel did object to the testimony. His objection was overruled, however, pursuant to Evid.R. 80l(D)(2) after lengthy discussion between counsel and the court.
 {¶ 56} Finally, appellant claims counsel was ineffective for failing to object to the detective's testimony as to a conversation she had with another officer. Detective Lester testified that she spoke to Officer Brian Mizer after he interviewed appellant; Lester stated that Mizer told her appellant denied sexually abusing Michelle. While this testimony was arguably objectionable, we note that earlier in the trial Officer Mizer testified to the same statement made to him by defendant. According to Officer Mizer, appellant stated that he "* * * ain't never had sex with her, period." Therefore, it is likely *Page 18 
defense counsel chose not to raise an objection to a statement that had been properly admitted earlier in the trial. Arguably, it was wise from a defense standpoint not to emphasize a claim by appellant that was clearly contradicted by DNA evidence already admitted.
 {¶ 57} Based on the foregoing, we find no indication counsel's representation fell below an objective standard of reasonableness or that, as appellant claims, omissions by counsel resulted in verdicts based on inappropriate evidence. Accordingly, appellant's third assignment of error is not well-taken.
 {¶ 58} In his sixth assignment of error, appellant asserts that the cumulative effect of errors in the trial court and ineffective assistance of counsel denied him a fair trial.
 {¶ 59} Addressing the issue of cumulative error, the Supreme Court of Ohio has held that a conviction may be reversed where the cumulative effect of errors deprives a defendant of the constitutional right to a fair trial even though each single instance of error does not individually constitute cause for reversal. State v. Garner,74 Ohio St.3d 49, 64, 1995-Ohio-l68, citing State v. DeMarco (1987),31 Ohio St.3d 191, paragraph two of the syllabus. In order to show that the effect of the errors was cumulative and prejudicial and therefore denied him a fair trial, appellant must show that there is a reasonable probability that without these errors, the outcome of the trial would have been different. State v. Moreland (1990), 50 Ohio St.3d 58, 69.
 {¶ 60} Because we have found that no errors occurred in the trial of this case, there can be no cumulative error, and appellant's sixth assignment of error is not well-taken. *Page 19 
 {¶ 61} In his seventh assignment of error, appellant asserts the trial court erred by sentencing him to maximum, consecutive sentences and imposing an additional 846 days for a post-release control violation.
 {¶ 62} We will address appellant's argument as to the sentence for his post-release control violation first. Appellant argues that the trial court should not have imposed a sentence for a post-release control violation in an earlier case because he was never notified at the time of the prior conviction that he would be subjected to post-release control. The record reflects that the offense of rape in case No. CRO5-3247 was committed on December 8, 2004, when appellant was under post-release control following a robbery conviction in case No. CR99-2572. When appellant was sentenced for the rape in this matter, the trial court properly imposed the 846 days remaining on his post-release control.
 {¶ 63} Appellant's argument that the trial court in the robbery case failed to give him notice that he would be subject to post-release control is not supported by the record. Appellant has failed to provide this court with the sentencing transcript or sentencing judgment entry from the robbery case and, accordingly, we must presume that he was given the appropriate notice when he was sentenced for the robbery conviction. If an appellant cannot demonstrate a claimed error, then a reviewing court will presume the regularity of the trial court proceedings and affirm the judgment. Lambert v. Lambert, 11th Dist. No. 2004-P-0057, 2005-Ohio-2259, ¶ 29; see, also, Rose Chevrolet, Inc. v.Adams (1988), 36 Ohio St.3d 17, 19-20. This argument is without merit. *Page 20 
 {¶ 64} Appellant also argues that the sentence is not sufficiently supported by the record and is "patently unreasonable." Appellant acknowledges that the requirement that a trial court state its reasons for each sentence it imposes was eliminated by State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856, but argues that he does not "fit the description" of a worst offender who committed the worst form of an offense.
 {¶ 65} The sentences appellant received for the seven convictions were all greater than the statutory minimum. Maximum sentences were imposed for the rape conviction in case No. CRO5-3247 (ten years) and for the three convictions for corruption of a minor in case No. CR05-1383 (18 months each). All sentences were ordered to be served consecutively.
 {¶ 66} This court has reviewed the transcript of appellant's sentencing hearing. The trial court appropriately stated that it had considered the record, the oral statements, the victim impact statement, the presentence report, and the principles and purposes of sentencing under R.C. 2929.11, as well as the seriousness and recidivism factors under R.C. 2929.12.
 {¶ 67} The sentencing transcript also reflects that trial court stated that it was ordering the sentences to be served consecutively because * * * it is necessary to punish the defendant as well as the harm caused to the victim was great and/or unusual and the defendant's criminal history also requires consecutive sentences." In light of the decision in Foster, and upon review of the record, we must find that the trial court relied on unconstitutional statutes in sentencing appellant. While the trial court did not cite to the *Page 21 
severed statutes by number, at appellant's sentencing hearing the court used language from R.C. 2929.14(E)(4) and (E)(4)(b). Accordingly, appellant's sentences are void and must be vacated. Foster, ¶ 103-104. Appellant's seventh assignment of error is well-taken in part.
 {¶ 68} On consideration whereof, the judgments of the Lucas County Court of Common Pleas are affirmed in part and reversed in part, and this cause is remanded to that court for resentencing. Appellant and appellee are ordered, pursuant to App.R. 24, to pay the costs of this appeal in equal shares. Judgment for the clerk's expenses incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., William J. Skow, J., Thomas J. Osowik, J., Concur. *Page 1